PEDRO LEÓN ORTIZ, recurrente, v. COMISIÓN INDUSTRIAL DE PUERTO RICO, ETC., demandada.

Número: O-71-75     Resuelto: 31 de octubre de 1973

*Pedro León Ortiz,* por su propio derecho; *Leoncio Carrasquillo Suárez, Wilfredo Márquez Boneta, Miguel A. Guzmán Soto* y *Jorge Márquez Gómez,* abogados del Administrador del Fondo del Seguro del Estado.

EL JUEZ ASOCIADO SEÑOR MARTÍN emitió la opinión del Tribunal.

Los hechos de este caso son sencillos. El patrono recurrente es dueño de un pequeño colmado-bar en la zona rural de Maunabo. Sus empleados están cubiertos por una póliza de tienda al detall expedida por el Fondo del Seguro del Estado (en adelante denominado "el Fondo"). Una cliente que regresaba del hospital con su hija pequeña enferma efectuó una compra en el colmado del recurrente. En vista del estado de salud de la niña, la madre pidió ayuda al recurrente para que éste consiguiera quien la llevara a su casa. El recurrente encargó a uno de sus empleados que la llevara en una camioneta, propiedad del recurrente, que utilizaba éste en relación con una construcción que estaba realizando adyacente al colmado en cuestión. Durante el viaje el empleado tuvo un accidente en el que sufrió la lesión de un brazo, recibiendo tratamiento médico en el Fondo. El Fondo declaró al recurrente "patrono no asegurado" (1) por el fundamento de que el empleado aludido se encontraba en gestiones de chofer, sin que la póliza bajo la clasificación de tienda al detall expedida para cubrir los empleados del colmado-bar incluyera la clasificación de "Choferes". La Comisión Industrial (en adelante denominada "la Comisión") confirmó la resolución del Fondo, y ordenó al patrono recurrente a pagar al Fondo la suma de $840.39 por concepto de gastos incurridos en el tratamiento y hospitalización del empleado lesionado. De esta determinación recurre el patrono ante nos por su propio derecho, alegando que no viene obligado a incluir en su póliza la clasificación de chofer por no emplear choferes en su negocio ni ofrecer servicio de entrega de mercancía.

El Art. 2 de la Ley de Compensaciones por Accidentes del Trabajo (en adelante denominada Ley de Compensaciones), 11 L.P.R.A. sec. 2, prescribe que las disposiciones de la ley

---

(1) El Administrador del Fondo está facultado para hacer la declaración de patrono no asegurado en el caso de que ocurriere un accidente de un obrero o empleado cuando trabajare para un patrono que en violación de la ley no estuviere asegurado. 11 L.P.R.A. sec. 28.

784

son aplicables a obreros y empleados que sufran lesiones o se inutilicen, o que pierdan la vida por accidentes que provengan ". . . de cualquier acto o función inherente a su trabajo o empleo y que ocurran en el curso de éste, y como consecuencia del mismo. . . ." Y, exceptúa expresamente a ". . . aquellos obreros y empleados cuya labor sea de carácter accidental o causal [sic] y no esté comprendida dentro del negocio, industria, profesión u ocupación de su patrono. . . ." (²)

A la fecha del accidente el patrono recurrente se dedicaba a dos actividades separadas y distintas: (1) operaba un colmado-bar en su carácter de dueño; y (2) realizaba una construcción en terrenos adyacentes al referido negocio. Ambas actividades estaban cubiertas por sendas pólizas expedidas por el Fondo, una bajo la clave 5213, grupo 273, sobre "construcción con hormigón" y otra bajo la clave 8017, grupo 343, sobre "tiendas al detal". Ambas clasificaciones aparecen en el "Manual de Clasificaciones de Oficios e Industrias y Tipos de Seguros en Vigor" (en adelante denominado "Manual de Clasificaciones") preparado por el Administrador del Fondo conforme lo requiere el Art. 23 de la Ley de Compensaciones por Accidentes del Trabajo. 11 L.P.R.A. sec. 24.

La clasificación de "tiendas al detal" aparece descrita en el Manual de Clasificaciones en vigor a la fecha del accidente, en la forma siguiente:

---

(²) En repetidas ocasiones hemos expresado, y volvemos a repetirlo ahora, que la Comisión Industrial hasta la fecha (en los 37 años que lleva la ley en vigor), no ha determinado por reglamento, según prescribe el Art. 38 de la ley, lo que se entiende por "caracter accidental y casual". *Arraiza Iglesia* v. *Comisión Industrial*, 85 D.P.R. 14, 16 (1962); *Atiles, Admor.* v. *Comisión Industrial*, 63 D.P.R. 597, 600 (1944); *Montaner, Admor.* v. *Comisión Industrial*, 57 D.P.R. 272, 278 (1940). La inacción de la Comisión Industrial al no haber definido lo que se entiende por "carácter accidental y casual" ha dado lugar a que el Fondo, y la Comisión,. le hayan dado su propia interpretación. La confusión que surge de la exclusión de empleados casuales ha sido motivo de que varios estados la han eliminado de sus leyes de compensaciones, tales como Massachusetts, Michigan, Missouri, New York y Wisconsin. 1A Larson's *Workmen's Compensation Law*, § 51.11, al escolio 92.

"Tiendas al Detal (N.I.C.) (³) . . . Toda clase de mercadería. Incluye joyería al por mayor y detal, tiendas por departamentos, puestos de leche, tiendas de 5 y 10 cts., tiendas de cooperativas y farmacias. Esta clasificación incluye, además, las fuentes de soda, barras y cantinas cuando se operen como parte del negocio." *Manual de Clasificaciones, ante.*

La clasificación precedentemente citada, según se desprende de su propio texto, ofrece cubierta completa sobre las actividades de tiendas al detall, como las del negocio del caso de autos, con sujeción a las limitaciones contenidas en la ley, en el reglamento o en la póliza. 11 R.&R.P.R. sec. 19–3. El reglamento dispone que la clasificación de patrono será aquella que envuelve la mayor nómina, excluyendo las "excepciones normales" que se mencionan más adelante. Id. sec. 19–5. Y, en el caso de empresas sencillas, como la del caso de autos, el reglamento dispone que cuando las actividades de un patrono consisten de una sola operación u operaciones separadas que prevalecen en el negocio o industria descrita bajo una sola clasificación del Manual, aquella clasificación que describa con mayor exactitud el negocio o industria en su totalidad es la que debe aplicarse. Id.

Queda por ver si la actividad incidental de transportar un cliente en las circunstancias presentes en este caso está cubierta por la póliza de tienda al detall que fue expedida al patrono recurrente. Ninguna de las actividades de dicho negocio está comprendida en las "Excepciones Normales y Exclusiones Generales", (⁴) *infra.* Si lo estuvieren, habrá que segregar la nómina de acuerdo con las distintas actividades a los fines de aplicar la prima que corresponda a la clasificación

---

(³) Las siglas N.I.C. son una abreviatura de la frase "No Incluida en otra Clasificación". Dicha abreviatura, con respecto a la clasificación "Tiendas al Detal" significa que no se aplicará dicha clasificación a caso alguno en que cualquier otra clasificación designe con mayor exactitud al negocio o industria del patrono. 11 R.&R.P.R. sec. 19–6.

(⁴) Las operaciones comprendidas bajo "Exclusiones Generales" no son aplicables al presente caso.

que comprenda aquellas que están excluidas. Para ello es necesario examinar las disposiciones reglamentarias que cubren las "excepciones normales" a la luz de la situación que plantea el caso de autos.

Las "excepciones normales", en lo que es pertinente a este caso, son las siguientes:

". . . (3) Externos vendedores [*sic*], cobradores, o mensajeros. Son aquellos empleados dedicados a tales ocupaciones *cuya labor principal* se lleva a cabo fuera del local del patrono. La definición no es aplicable a ninguno de tales empleados cuya labor incluya conducción y entrega de mercancías. Aquellos empleados *cuya labor incluya la conducción y entrega de mercancías*, aun cuando a la vez hagan cobros o soliciten pedidos, se catalogarán como:

(A) Carreteros, si manejan vehículos tirados por fuerza animal.

(B) *Choferes, si manejan vehículos de motor o bicicletas.*

(C) Incluidos en la clasificación predominante, si viajan en vehículos de servicio público o a pie.

.    .    .    .    .    .    .    .

(5) *Choferes y ayudantes*, son aquellos empleados cuyo trabajo se lleva a cabo *principalmente* en vehículos de motor o en relación con los mismos, incluyéndose también empleados incidentales de garaje, y empleados que en el servicio de sus patronos usen bicicletas." (Énfasis suplido.) Id. sec. 19–5.

El inciso (3) arriba citado en relación con "excepciones normales" se refiere a aquellos empleados dedicados a las ocupaciones de vendedores externos, cobradores o mensajeros, cuya labor *principal* se lleva a cabo fuera del local del patrono; a menos que la labor de ellos incluya conducción y entrega de mercancía en cuyo caso se catalogarán como "choferes", si manejan vehículos de motor o bicicletas. Asumiendo que el trabajador del caso ante nos se considerase un chofer, por el hecho de estar manejando un vehículo de motor al momento de ocurrir el accidente, no es un chofer dentro de la definición de "choferes" que aparece al inciso (5) que

citamos precedentemente, ya que ésta requiere que la labor de chofer sea realizada *principalmente* en vehículos de motor o en bicicleta.

■ La prueba no controvertida del patrono fue al efecto de que éste no hacía entregas de mercadería a domicilio ni usaba choferes en relación con su negocio de colmado, por lo que la labor del empleado lesionado era principalmente la que ordinariamente corresponde a un empleado de colmado y no a la de chofer que requiere que la misma sea realizada principalmente en vehículos de motor o en bicicleta. Dicha prueba no fue controvertida por el Fondo. Tampoco hubo prueba al efecto de que el empleado lesionado habitualmente dedicara alguna parte de su tiempo a la labor de chofer cuya clasificación envuelve un riesgo mayor que la clasificación de empleado de tiendas al detall. En las circunstancias de este caso la gestión de conducir la cliente del patrono realizada por encomienda de éste para beneficio del negocio constituyó un acto o función inherente al empleo del trabajador y ocurrió en el curso de éste, y como consecuencia del mismo. En vista de lo expuesto no debe haber duda alguna de que el empleado lesionado está propiamente cubierto bajo la clasificación de tiendas al detall en la póliza expedida por el Fondo al patrono recurrente.

■ La jurisprudencia ha establecido reiteradamente que cuando un contrato de seguros es susceptible de dos interpretaciones debe utilizarse la que más favorezca al asegurado. Véase *Barreras* v. *Santana*, 87 D.P.R. 227, 231 (1963) citando a 3 Richards *On Insurance*, 5ta. ed., 1952, pág. 1314 y autoridades allí citadas; véanse además Puig Brutau, *Fundamentos de Derecho Civil*, Tomo II, Vol. II, ed. 1956, pág. 486 y Castán, *Derecho Civil Español, Común y Foral*, Tomo III, 8a. ed., 1954, pág. 332. Las dudas deben resolverse de modo que se realice el propósito de la póliza, y no se favorecen las interpretaciones sutiles para evadir la responsabilidad.

Véase *Barreras*, ante, pág. 235 y autoridades allí citadas. La regla no es distinta cuando el asegurador es el Estado.

■ La situación sería distinta si la función ejercida por el empleado al ocurrir el accidente fuere incidental a otro negocio o industria a que el patrono estuviere dedicado que no hubiere sido incluido en la póliza. Un buen ejemplo de este tipo de exclusión sería si el referido empleado del colmado fuere utilizado para una gestión del negocio de construcción del mismo patrono cuyo negocio resulta tener una clasificación distinta al de colmado. Es evidente que la actividad del negocio de colmado no es incidental a la de construcción. Ambas actividades son distintas y separadas. En la situación aludida aplicarían los preceptos del Art. 25 de la Ley de Compensaciones, 11 L.P.R.A. sec. 26, que requiere que el patrono cubra bajo una misma póliza todas las actividades a las cuales se dedica, y de no hacerlo, se consideraría patrono no asegurado con respecto a la actividad no incluida en la póliza.

Ilustra la doctrina explicada precedentemente el caso de *Atiles, Admor.* v. *Comisión Industrial*, 68 D.P.R. 448 (1948). Se trataba allí de una empleada doméstica que rendía labores como tal al ocurrir el accidente objeto de reclamación, en relación con un patrono cuya póliza cubría un negocio agrícola. Se determinó en dicho caso que la lesionada no estaba realizando labor incidental al negocio agrícola del patrono. Claramente la actividad como empleada doméstica a que se dedicaba la lesionada era distinta a la actividad agrícola del patrono. ([5])

El caso de *Calderone Lines, Inc.* v. *Comisión Industrial*, 91 D.P.R. 526 (1964), sostiene el mismo principio del de *Atiles*, ante. La prueba en dicho caso demostró que el negocio del patrono consistía de un 75% en la transportación de pasajeros y un 25% en la transportación de mercancía. El obrero

---

([5]) En la fecha del caso citado las empleadas domésticas no estaban protegidas por la Ley de Compensación por Accidentes del Trabajo.

lesionado se encontraba realizando un trabajo consistente en la descarga de mercancía de una lancha. La póliza del patrono cubría la actividad de "explotación u operación de embarcaciones" que no incluía la de "cargo y descargo de vapores" que constituye otra clasificación del manual. El patrono alegaba que la descarga de mercancía era una actividad incidental a la de operación de embarcaciones. Determinamos allí que se trataba del manejo de carga pesada lo que no era incidental a la transportación de pasajeros. Resolvimos entonces que las tareas de carga y descarga no estaban incluidas en la clasificación comprendida en la póliza por lo que sostuvimos que el patrono era uno no asegurado.

En el caso de autos, contrario a los dos casos mencionados, el empleado lesionado se dedicaba a la actividad de colmado a la que se dedicaba el patrono, cuya póliza fue formalizada de acuerdo a la clasificación adecuada para ese negocio, y las gestiones realizadas por el empleado al momento de ocurrir el accidente eran incidentales a dicho negocio y para beneficio del mismo.

Estamos conscientes del factor actuarial sobre el que descansa la filosofía del seguro. Por ello la ley exige a los patronos el asegurar todas las actividades a las que se dedica. La clara intención de ello es que no se quede fuera del seguro ninguna actividad que envuelva riesgos mayores que aquellos para los que el patrono solicite cubierta. A esos fines la Ley de Compensaciones requiere que el Administrador prepare anualmente una lista de clasificaciones de acuerdo con los varios oficios o industrias. 11 L.P.R.A. sec. 24. La revisión anual de las clasificaciones se efectúa a base de los datos acumulados en la práctica de seguros habida desde la fecha de vigencia de la Ley de Compensaciones y hasta el 31 de diciembre del año anterior a la revisión, y de acuerdo "con aquella otra experiencia incidental y con las estadísticas de que pueda disponerse con relación a los peligros y riesgos del seguro en la clasificación a revisar." (Énfasis suplido.) Al

revisar las clasificaciones el Administrador debe revisar también las primas que correspondan a las clasificaciones vigentes que a su juicio deben revisarse. Id. Vemos pues que el legislador delineó cuidadosamente el mecanismo actuarial del seguro que habrá de revisarse de año en año para evitar poner en peligro la estabilidad del Fondo y por ende ofrecer la protección debida a lós obreros y la que corresponde a los patronos.

Podemos imaginarnos innumerables situaciones en las que se ven envueltos los patronos de día en día sin tener seguridad alguna en cuanto a la cubierta que les ofrece la póliza del Fondo, por mor de que en un momento dado un empleado efectúe una gestión la cual aunque aislada, ocasional y puramente accidental sea inherente a la actividad a que se dedica el patrono. En la complejidad del mundo de los negocios, y desde el punto de vista práctico, no podemos imponer a los patronos una norma irrazonable que interrumpa el flujo del diario acontecer práctico en la actividad comercial, industrial o profesional del país. El patrono, naturalmente, tendrá el peso de la prueba para demostrar que la gestión llevada a cabo al ocurrir el accidente es incidental al negocio cubierto por el seguro y puramente accidental, aislada y ocasional, con respecto al tipo de trabajo que normalmente realiza el empleado.

■ Concluimos que el patrono peticionante es un patrono asegurado y por consiguiente la lesión sufrida por el empleado en las circunstancias presentes en este caso está cubierta por la póliza de tiendas al detall.

La conclusión a que llegamos no sólo nos parece la más ajustada a derecho sino que además cumple la función de proveerle certeza a los patronos con respecto a la cubierta de sus pólizas con el Fondo del Seguro del Estado. Esta interpretación es la más razonable dentro del principio de obligatoriedad que fundamenta el seguro de compensaciones a obreros.

*Se revocará la decisión de la Comisión Industrial.*