Rossy García, Juez Ponente
*863 TEXTO COMPLETO DE LA RESOLUCION
El recurso instado en el caso de epígrafe interesa la revisión y revocación de una sentencia sumaria parcial emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan (José M. Rodríguez Viejo, J.). Mediante ésta, dicho foro desestimó sumariamente la demanda contra tercero instada por el aquí apelante, señor Gabriel Suau h/n/c El Monóculo, Inc., contra Cigna Insurance Co. of Puerto Rico (Cigna). Al así dictaminar, resolvió que las cláusulas del contrato de seguros suscrito por las partes eran claras y que, bajo las circunstancias particulares del caso de autos, no ofrecían cubierta al aquí apelante.
Inconforme con el dictamen, el señor Suau interpuso en tiempo oportuno el recurso que hoy nos ocupa. En éste imputa, en síntesis, que el tribunal de instancia incidió al declarar con lugar la moción de sentencia sumaria presentada por el tercero demandado-apelado. Argumenta que en el caso existían controversias sobre hechos materiales atinentes a la intención y propósito de las partes al vender el asegurador y comprar el asegurado la cubierta específica, así como en cuanto a los riesgos que se interesaban asegurar, lo que hacía improcedente la sentencia sumaria que es objeto de impugnación.
I
Para colocar el caso que nos ocupa en correcta perspectiva se hace menester iniciar con una exposición del trasfondo que dio base a la expedición de la póliza cuya cubierta es aquí objeto de controversia.
El tercero demandante-apelante, Gabriel Suau, es el Presidente de El Monóculo, Inc., corporación dedicada a la producción de programas de televisión, entre éstos el programa tipo “cámara cómica”, “Te Veo”. Por la naturaleza particular de dicha actividad y los riesgos inherentes en la producción de este tipo de programas, en los que se interacciona con el público y se crean situaciones que exponen al aquí apelante a riesgos especiales al hacer negocios que pudieran conllevar responsabilidad civil, éste se vio en la necesidad de gestionar y obtener una póliza para tener dichos riesgos debidamente asegurados.
Surge de los autos que en un incidente anterior al que hoy nos ocupa, El Monóculo, Inc. demandó a una compañía de seguros con la que había contratado una póliza que alegadamente cubría todos los riesgos inherentes a su negocio, por ésta negarse a brindarle cubierta y defensa ante una reclamación presentada en su contra por una persona que sufrió daños, como resultado de la grabación de una de las bromas del programa “Te Veo”. En dicho caso la aseguradora se negó a brindar cubierta, ello por razón de que a su juicio, los daños alegados en la demanda se hicieron intencionalmente, por lo que los mismos no estaban cubiertos. No obstante lo anterior, surge del expediente del presente caso que el Tribunal de Distrito Federal para el Distrito de Puerto Rico, ante el cual fue incoada dicha acción, resolvió que la póliza sí cubría la referida reclamación, así como que la compañía de seguros en cuestión venía obligada a satisfacer los daños resultantes. 
*864 Con estos antecedentes y con el fin de evitarse próximos litigios, el aquí apelante decidió negociar, a través de su corredor de seguros, Humberto Donato, una nueva póliza que cubriera todos los posibles riesgos inherentes a su negocio. Así las cosas, el señor Donato comenzó negociaciones con Cigna para suscribir una póliza especial que cubriera los riesgos a los que estaban expuestas las producciones de El Monóculo, Inc. Con este fin, el señor Donato explicó detalladamente a Cigna la naturaleza de los negocios de El Monóculo, Inc. y las funciones a las que se dedicaba. Asimismo, explicó a los oficiales de Cigna los riesgos a los que estaba expuesta dicha empresa como consecuencia del tipo de negocio que realizaba. Dada la naturaleza especial de la cubierta negociada, El Monóculo, Inc. accedió a pagar una prima sustancial de $20,337, a cambio de la cual, Cigna acordó asegurar el negocio del aquí apelante.
Como resultado de estas negociaciones, Cigna expidió a favor de Gabriel Suau h/n/c El Monóculo, Inc. una póliza de Seguro Comprensivo de Responsabilidad General (SCRG) o “Comprehensive General Liability Insurance”, Póliza de Responsabilidad Comercial o “Commercial General Liability” Núm. 41PR5192, a la cual se le hicieron unos cambios específicos para atemperar la misma a las necesidades particulares del negocio de El Monóculo, Inc. A tales fines, Cigna modificó de la “póliza modelo” mediante el Endoso A la Sección l.b. (1) de la Cubierta B sobre “personal injury”. 
Esta sección originalmente disponía como sigue :

“b.This insurance applies to:

(1) “Personal injury” caused by an offense arising out of your business, excluding advertising, publishing, broadcasting, or telecasting done by or for you; ”

La misma file modificada en la póliza expedida a favor de Gabriel Suau h/n/c El Monóculo, Inc. de la siguiente manera:

“b.This insurance applies to:

(1) “Personal injury" caused by an offense arising out of your business, excluding advertising or publishing done by or for you; ”

El cambio consistió en eliminar de la aludida sección los términos “publishing” y “telecasting” para atemperar la “póliza modelo ” al tipo de negocio a que se dedicaba El Monóculo, Inc., a saber, la producción de programas para la televisión. Según se desprende del propio Endoso A, la modificación de esta sección se concedió en consideración a la prima cobrada. 
Así las cosas, el 8 de agosto de 1997, la señora Daisy Sánchez presentó demanda de daños y perjuicios contra Gabriel Suau h/n/c El Monóculo, Inc. por los daños que sufrió al ser alegadamente “agredida intencionalmente ” por uno de los empleados del aquí apelante durante la grabación de una de las bromas del programa “Te Veo”. El aquí apelante contestó la demanda, negando todas las alegaciones esenciales de la misma. De otra parte, procedió a referir la reclamación incoada en su contra a Cigna para que le brindara representación legal y asumiera responsabilidad bajo los términos de la referida póliza por ella expedida, la que a su juicio cubría los riesgos y daños reclamados en la demanda.
Con estos antecedentes, Cigna procedió a negarle cubierta y defensa al aquí apelante por entender que las alegaciones de la demanda “no contenían reclamación que potencialmente pudiese estar cubierta por la póliza”. Además, denegó la renovación de la póliza que era objeto de disputa. Ello dio base a que el 17 de *865 septiembre de 1997, el señor Suau presentara demanda contra tercero contra Cigna, alegando que ésta había incumplido sus obligaciones bajo el contrato de seguros suscrito por las partes al dejar de proveerle defensa y negarle cubierta ante la reclamación de la señora Sánchez. Emplazada como fue, Cigna contestó la demanda contra tercero, negando las alegaciones básicas en ella contenidas. Como defensas afirmativas invocó, entre otras, que la póliza suscrita a nombre del señor Suau no ofrecía cubierta por los daños alegados en la demanda original, porque los hechos en los que estaba basada la reclamación no constituían una “ocurrencia” o “accidente” bajo los términos de la póliza; los daños reclamados tampoco constituían un “bodily injury” o “personal injury” bajo las definiciones de la póliza; y que, además, dichos daños estaban excluidos de la cubierta de la póliza por ser producto de la violación intencional de un estatuto penal. 
Luego de una serie de incidentes procesales que resulta innecesario reseñar, Cigna presentó una moción de sentencia sumaria solicitando la desestimación de la acción contra ella instada. Fue su contención que de las alegaciones de la demanda original no surgía una reclamación que estuviese cubierta por la póliza por ella expedida, por lo que no tenía que proveerle cubierta ni defensa al señor Suau ante la demanda incoada en su contra. En apoyo a tal contención, sometió copia de la póliza por ella expedida a favor de la aquí apelante. Dicha moción fue oportunamente replicada, argumentando en oposición la aquí apelante que, conforme los términos específicos de la póliza de seguros, según fueron negociados por las partes, Cigna estaba obligada a proveer cubierta y defensa al asegurado por los daños alegados en la demanda. Con su moción en oposición sometió una declaración jurada del señor Humberto Donato Brugueras, corredor de seguros que la representó en la negociación de la póliza objeto de controversia expedida por Cigna, ésta a los fines de establecer la existencia de controversia en cuanto a la intención de las partes al comprar el asegurado y expedir Cigna la referida póliza, así como en cuanto a los riesgos que habrían de quedar asegurados bajo la póliza. En ésta consignó el Sr. Donato, bajo juramento, que fue él la persona que negoció y logró suscribir para Gabriel Suau y el Monóculo, Inc. el contrato de seguros con Cigna; que durante la negociación explicó detalladamente a los oficiales de Cigna la naturaleza exacta de los negocios del Monóculo, Inc., los riesgos a los que estaba expuesta la empresa por la naturaleza del negocio a que se dedicaba y la necesidad que tenía ésta de obtener un seguro especial que cubriera dichos riesgos; que la información por él vertida le fue comunicada, a su vez, a los oficiales de la Compañía Aseguradora Cigna, al igual que a la agencia Ocaso; que en vista de los riesgos a los que estaba expuesta la empresa, el aquí apelante aceptó pagar una prima sustancial de $20,337 por la cubierta especial por él solicitada; así como que en consideración a la alta prima recibida Cigna acordó asegurar y expedir la póliza solicitada, consciente en todo momento de la exposición y riesgo asegurado. En réplica, Cigna se limitó a reiterar en su argumentación que los daños reclamados no estaban cubiertos bajo la póliza, ello sin someter contradeclaración jurada alguna para refutar el contenido de lo consignado bajo juramento por el Sr. Donato.
Fue a la luz de estos antecedentes que el 16 de marzo de 1999, luego de acoger el foro de instancia con aprobación la argumentación de Cigna, procedió a emitir sentencia sumaria parcial según le fue solicitado. Desestimó así sumariamente la demanda contra tercero incoada por el aquí apelante.
Por los fundamentos que pasamos a exponer, resolvemos que el foro de instancia incidió al así resolver.
II
Por la naturaleza del dictamen apelado, se hace menester aclarar de entrada los principios y criterios a considerarse en la correcta atención y disposición de una moción peticionando la desestimación sumaria de una reclamación mediante el vehículo procesal dispuesto en la Regla 36 de las de Procedimiento Civil, 31 L.P.R.A. Ap. III.
En nuestra jurisdicción, las disposiciones que regulan la “sentencia sumaria” están contenidas en la Regla *866 36 de las de Procedimiento Civil, supra. Particularmente, la Regla 36.3 autoriza que, una vez una parte solicita que la sentencia sea dictada sumariamente, el tribunal así interpelado puede dictar inmediatamente la sentencia solicitada si
"... las alegaciones, disposiciones [deposiciones], contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas, si las hubiere, demostraren que no hay controversia real sustancial en cuanto a ningún hecho material y como cuestión de derecho debe dictarse sentencia sumaria a favor de la parte promovente. ”
Por otro lado, la Regla 36.5 advierte que:

“[cjuando se presenta una moción solicitando que se dicte sentencia sumaria y se sostenga en la forma provista en esta regla 36, la parte contraria no podrá descansar solamente en aseveraciones o negaciones contenidas en sus alegaciones, sino que vendrá obligada a contestar en forma tan detallada y específica, como lo hubiere hecho la parte promovente, exponiendo aquellos hechos pertinentes a la controversia que demuestren que existe una controversia real que debe ser dilucidada en un juicio. De no hacerlo así, se dictará en su contra la sentencia sumaria si procediere. ”

Como puede observarse, la Regla 36 limita la procedencia de la sentencia sumaria a aquellas instancias en que, de los documentos que obran en autos, apoyados por la moción del promovente y los que en oposición aporte el promovido, surja que los hechos materiales o esenciales para resolver la acción incoada no están en controversia Sucn. Meléndez v. D.A.C.O., 112 D.P.R. 86, 89 (1982) Un extracto de los casos que han resuelto sobre la sabia y prudente utilización de este mecanismo, aconseja que el tribunal interpelado debe cerciorarse de la total inexistencia de controversias de hechos y que lo que reste por hacer sea la aplicación del derecho. Guerrido García v. U.C.B, 143 D.P.R. _ (1997), 97 J.T.S. 79; Figueroa v. Hernández Torres, 139 D.P.R. _ (1994), 94 J.T.S. 134; Caquías Mendoza v. Asoc. Res. Mansiones Río Piedras, 135 D.P.R. _ (1993), 93 J.T.S. 127; J.A.D.M. v. Centro Com. Plaza Carolina, 133 D.P.R. _ (1993), 93 J.T.S. 26; Rivera et al. v. Superior Pkg., Inc. et al., 133 D.P.R. _ (1992), 92 J.T.S. 165; Nassar Rizek v. Hernández, 123 D.P.R. 36 (1989); Corp. Presiding Bishop CJC of LDS v. Purcell, 117 D.P.R. 714, 720 (1986).
En forma consecuente con la normativa jurisprudencial antes expuesta, el Tribunal Supremo de Puerto Rico señaló en Corp. Presiding Bishop CJC of LDS v. Purcell, supra, págs. 722-723, que al considerar la procedencia de una sentencia sumaria, el tribunal interpelado debe analizar todos los documentos que acompañan a la moción de sentencia sumaria y a la oposición, así como todos los documentos que obren en el expediente. Padín v. Rossi, 100 D.P.R. 259, 263-264 (1971). También ha instruido que no deberá dictarse una sentencia sumaria cuando surjan hechos materiales que han sido controvertidos; cuando hayan alegaciones afirmativas en la demanda que han sido refutadas; o cuando de los propios documentos que acompañan la moción de sentencia sumaria surja una controversia real sobre algún hecho material, circunstancias todas que apuntan a que, como cuestión de derecho, no procede dictarse sentencia sumariamente. P.E.Z. Props. Inc. v. Gen. Acc. Ins. Co., 139 D.P.R. _ (1994); 94 J.T.S. 116, pág. 125. Así y como bien ha expresado dicho Alto Foro, al enfrentar dudas en cuanto a la existencia de una controversia real o cuando hay alegaciones afirmativas que han sido refutadas, el tribunal interpelado debe resolver en contra de la parte promovente y a favor de un juicio vivo. Valcourt Questell v. Tribunal Superior, 89 D.P.R. 827, 832 (1964); Ruth v. Lucio, 87 D.P.R. 386, 396 (1963). Este acercamiento cauteloso responde a que, en nuestro ordenamiento jurídico, una parte tiene derecho a un juicio plenario, ya sea cuando exista la más leve o mínima duda sobre cuáles son los hechos en controversia, como cuando existan uno o más hechos materiales que han sido efectivamente controvertidos.
*867 Atinente a la situación particular del caso de autos, se ha resuelto que es apropiado el uso de la sentencia sumaria para resolver controversias que envuelven la interpretación de contratos que no son ambiguos. Ocasio v. San Juan Dock Co., 75 D.P.R. 930, 937-938 (1954). Sin embargo, si la disposición del caso gira en tomo a una determinación de intención, “los tribunales deben ser especialmente cautelosos en la concesión de una sentencia sumaria, ya que la resolución de esa controversia depende en gran medida de la credibilidad de los testigos, la cual debe ser determinada luego de observar su demeanor en el directo y el contrainterrogatorio. Esto es particularmente aplicable cuando la controversia sobre intención gira en tomo a un contrato ambiguo donde la intención es una cuestión de hecho no apropiada para resolverse por sentencia sumaria. ” José A. Cuevas Segarra, Práctica Procesal Puertorriqueña, Publicaciones J.T.S., San Juan (1995), pág. 191. En armonía con ello, y ampliado el alcance de esa perspectiva, el Tribunal Supremo de Puerto Rico ha señalado que no es aconsejable utilizar el mecanismo procesal de la sentencia sumaria en casos donde hay elementos subjetivos de intención, propósitos mentales o negligencia, en los que el factor de credibilidad juega un papel esencial en la búsqueda de la verdad. Soto v. Hotel Caribe Hilton, 139 D.P.R. _ (1994), 94 J.T.S. 128, pág. 311.
De otra parte y en lo que respecta a la normativa prevaleciente en tomo a la interpretación de los contratos en general, el Art. 1233 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 3471, dispone que:

“[s]i los términos de un contrato son claros y no dejan dudas sobre la intención de los contratantes, se estará al sentido literal de sus cláusulas.

[Sin embargo] [s]i las palabras parecieren contrarias a la intención evidente de los contratantes, prevalecerá ésta sobre aquélla. ”

Como puede observarse, en el proceso de interpretar los términos de un contrato, la intención que tuvieron las partes al contratar es de vital importancia. Tan es así que la intención de las partes prevalece sobre el sentido literal de las palabras, aún cuando éstas parecieren contrarias a aquélla. Merle v. West Bend Co., 97 D.P.R. 403, 409 (1969). De otra parte, el Art. 1234 del Código Civil, 31 L.P.R.A. sec. 3472, establece que al pasar juicio sobre la intención de los contratantes, deberá atenderse principalmente a los actos de éstos, coetáneos y posteriores al otorgamiento del contrato. Esta norma de hermenéutica contractual ha sido ampliada por el Tribunal Supremo de Puerto Rico para que, además de considerar los actos anteriores o preparativos del contrato, también se considere toda otra circunstancia que contribuya a determinar la intención de las partes. Ramírez, Segal & Látimer v. Rojo Rigual, 123 D.P.R. 161, 174 (1989); Marina Ind., Inc. v. Brown Boveri Corp., 114 D.P.R. 64, 69-70 (1983); Coop. La Sagrada Familia v. Castillo, 107 D.P.R. 405, 417 (1978).
En el caso particular de los contratos de seguros, el Art. 11.250 del Código de Seguros de Puerto Rico, 26 L.P.R.A. sec. 1125, dispone que la interpretación de este tipo de contrato debe hacerse globalmente, a base del conjunto de sus términos y condiciones, según se expresan en la póliza. Asimismo, sus términos deben ser tomados y entendidos en su acepción popular y ordinaria, por lo que se buscará el sentido o. significado que a las palabras de la póliza le daría una persona normal de inteligencia promedio. PFZ Properties, Inc. v. General Accident Insurance Co., 139 D.P.R. _ (1994), 94 J.T.S. 116, pág. 121. Además, por ser el contrato de seguro uno de adhesión, en el cual la aseguradora escribe a su arbitrio todas las cláusulas y condiciones del contrato, el mismo está sujeto, más que cualquier otro contrato bilateral, a la influencia y modificación que sobre el texto de la póliza produce la intención y propósito de las partes al vender el asegurador y al comprar el asegurado la cubierta específica contra el riesgo particular que es causa del contrato. Banco de la Vivienda v. Pagán Ins. Underwriters, 111 D.P.R. 1, 6 (1981). Por ello, de surgir obscuridad en su redacción, sus cláusulas deberán ser interpretadas de la forma más favorable al asegurado. PFZ Properties, Inc. v. General Accident Insurance Co., supra, pág. 121; Rivera Robles v. Insurance Co. of P.R., 103 D.P.R. 91, 93 (1974); León Ortiz v. Comisión *868 Industrial, 101 D.P.R. 781, 787 (1973); Barreras v. Santana, 87 D.P.R. 227, 232 (1963). De igual forma, y en atención a que el propósito del contrato de seguros es indemnizar y proteger al asegurado, en la eventualidad de que se produzca un suceso incierto previsto en la póliza, las cláusulas de exclusión deberán interpretarse restrictivamente, lo que implica que las dudas serán resueltas de modo que se cumpla con el propósito por el cual se suscribió la misma. PFZ Properties, Inc. v. General Accident Insurance Co., supra, pág. 121, y casos allí citados.
En el caso particular de las pólizas de Seguro Comprensivo de Responsabilidad General (SCRG), como la expedida por Cigna a favor de El Monóculo, Inc. en el presente caso, la cual sigue la estructura conocida como la de “todo riesgo”, y emplea el lenguaje y formato de una “póliza modelo” , el asegurador establece la cubierta del seguro expedido mediante una cláusula denominada “acuerdo general de cubierta” (“Coverage or Insurance Agreement”). Mediante ésta, la aseguradora que la emite se compromete a pagar, “aquella suma de dinero que el asegurado esté legalmente obligado a pagar por daños físicos o daños a la propiedad, a los que este seguro aplique....” De otra parte, la póliza que nos ocupa enumera al menos 17 “exclusiones” de responsabilidad que son las que limitan la obligación de la aseguradora, de modo que los riesgos que no se excluyan expresamente en la póliza, serán los que quedan incluidos como parte de la garantía del seguro. Soc. de Gananciales v. Serrano, 145 D.P.R. _ (1998), 98 J.T.S. 48, pág. 848; Meléndez Piñero v. Levitt & Sons of P.R., 129 D.P.R. 521, 536 (1991). Véase, además, 2 Long, The Law of Liability Insurance, Sec. 11A. 100 [1], pág. 11A- 33 - 34 (1992). De tal modo se entiende que el asegurador que emite la póliza "... responderá por todos los daños causados por su asegurado a menos que estén expresamente excluidos”. Soc. de Gananciales v. Serrano, supra, pág. 848. Véase, además, Meléndez Piñero v. Levitt & Sons of P.R., supra, pág. 538.
Al momento de determinar qué daños físicos o a la propiedad están cubiertos por este tipo de póliza, el Tribunal Supremo de Puerto Rico ha resuelto que se tienen que tomar en consideración elementos, tales como, las exclusiones, la designación de facilidades y la descripción de riesgos contenidas en la póliza. Resulta igualmente importante considerar elementos extrínsecos como la intención de las partes y la prima fijada, todo esto a la luz de las prácticas y costumbres prevalecientes en la industria del seguro, elementos imprescindibles para suplir las omisiones del contrato. Soc. de Gananciales v. Serrano, supra, pág. 848; A.A.A. v. Librotex, 142 D.P.R. _ (1997), 97 J.T.S. 41, pág. 825. En armonía con ello, y ampliando el alcance de esta normativa, el Tribunal Supremo de Puerto Rico ha señalado que si la controversia planteada ante el tribunal interpelado es determinar si el lenguaje de una de las cláusulas de exclusión de la póliza excluye de la cubierta los hechos por los cuales se reclama a la aseguradora, las normas de interpretación a seguir son las siguientes: (1) toda duda será resuelta a favor del asegurado en cumplimiento con el criterio hermenéutico de “contra preferentem” contenido en el artículo 1240 del Código Civil, 31 L.P.R.A. sec. 3478; y (2) el contrato será interpretado globalmente, a base del conjunto total de sus términos y condiciones, según estén expresados en la póliza. Soc. de Gananciales v. Serrano, supra, pág. 848; Meléndez Piñero v. Levitt & Sons, supra; A.A.A. v. Librotex, supra, pág. 825. No obstante, cabe aclarar que la aplicación de esta norma de interpretación no es absoluta, ya que ésta va a depender del tipo de controversia que se le plantee al tribunal.
Conforme a la normativa antes expuesta podemos afirmar que frente a una controversia sobre el alcance de la cubierta de una póliza y, en particular, en tomo a la intención de las partes, la interpretación del contrato debe hacerse a base del conjunto de sus términos y condiciones, tomando en consideración, además, el efecto que sobre el texto de la póliza produce la intención de las partes al vender el asegurador y comprar el asegurado la misma. Por ello, en tales situaciones el tribunal no puede limitar su análisis interpretativo a la evaluación del lenguaje empleado en la póliza, sino que será necesario considerar elementos extrínsecos, tales como: (1) la intención de las partes al contratar, (2) la prima pactada ; (3) las circunstancias concurrentes con la negociación y contratación; y (4) las prácticas y costumbres prevalecientes en la industria de los *869 seguros. Soc. de Gananciales v. Serrano, supra, pág. 848. Así lo reconoció también el Tribunal Supremo de Puerto Rico en, Banco de la Vivienda v. Pagan Ins. Underwriters, supra, pág. 7, cuando sostuvo que:
“[l]a interpretación de los contratos y demás actos jurídicos, aunque haya de partir de la expresión contenida en las palabras pronunciadas o escritas, no puede detenerse en el sentido riguroso o gramatical de las mismas, y ha de indagar fundamentalmente la intención de las partes y el espíritu y finalidad que hayan presidido el negocio, infiriéndose de las circunstancias concurrentes y de la total conducta de los interesados... ”. F. Bonet Ramón, Código Civil Comentado, 2da. ed. pág. 1009.
Asimismo, dicho Tribunal sostuvo en A.A.A. v. Librotex, Inc., supra, que:

“[ajunque ciertamente el lenguaje es esencial, la prima también es un factor determinante al momento de examinar la expectativa de los contratantes, ya que por lo general, la misma es proporcional al riesgo que asume la aseguradora. ”

A tenor con la normativa antes esbozada, resulta evidente que el alcance de la cubierta de una póliza tipo SCRG como la de autos siempre deberá interpretarse a la luz del lenguaje empleado en la póliza y de la intención y propósito que tuvieron las partes al contratar. Soc. de Gananciales v. Serrano, supra, pág. 849. Por tanto, siendo la intención y el propósito de las partes al contratar un elemento esencial para determinar el alcance de la cubierta de este tipo de póliza, de surgir controversia al respecto, el tribunal tiene la obligación de indagar sobre la “voluntad real de las partes, más aún que la voluntad declarada. ” Ramírez, Segal & Látimer v. Rojo Rigual, 123 D.P.R. 161, 173 (1989). Según indicado, ello requiere que el tribunal vaya más allá de la expresión contenida en las palabras escritas en la póliza y tome en consideración la ocasión, las circunstancias, las personas y el acuerdo que se intentó llevar a cabo. Id, pág. 174. Elementos que sólo pueden ser considerados y adjudicados por el juzgador de los hechos en un juicio plenario.
Veamos ahora la situación particular del caso que nos ocupa a la luz de la normativa antes reseñada.
III
Un examen de los escritos presentados, la declaración jurada suscrita por el Sr. Humberto Donato, agente de seguros, y los demás documentos que obran en el expediente, hace evidente que el propósito de la póliza expedida por Cigna a favor del aquí apelante era proteger al asegurado contra los riesgos inherentes a su negocio. A estos fines, Cigna expidió una póliza de responsabilidad pública SCRG o “a todo riesgo” a favor del aquí apelante para asegurar el negocio de El Monóculo, Inc., que como indicáramos anteriormente, se dedica específicamente a la producción de programas de comedia y parodia, en particular, el programa “Te Veo”, que tiene como elemento característico la interacción con el público en general. Como indicáramos anteriormente, este tipo de póliza se caracteriza por ofrecer una cubierta de responsabilidad amplia que cubre determinadas actividades del asegurado capaces de producir daños y en la que el asegurado limita el ámbito de su obligación al proveer expresamente mediante cláusulas de exclusión los riesgos específicos que no están cubiertos por la póliza. Por ello se presume que todas las actividades del negocio asegurado están cubiertas, excepto aquellas expresamente excluidas en la póliza Soc. de Gananciales v. Serrano, supra, pág. 848.
En el caso que nos ocupa, el aquí apelante sostiene que Cigna tenía la obligación de brindarle cubierta y defensa contra la acción de daños instada en su contra por la señora Sánchez. Postula que Cigna tenía pleno conocimiento del tipo de negocio al que se dedicaba El Monóculo, Inc. y los riesgos que interesaba ésta quedaran asegurados al negociar y expedir ésta la póliza que es objeto de controversia, los que fueron por ella asumidos al expedir una póliza con cubierta SCRG o “a todo riesgo” y exigir el pago de una suma sustancial por concepto de prima, que fue aceptada y satisfecha por la apelante. Es su contención que, bajo estas circunstancias, Cigna *870 estaba obligada a cubrir cualquier riesgo proveniente del negocio del asegurado que no estuviera expresamente excluido en la póliza de seguros otorgada. 
Por su parte, fue la contención de Cigna que el lenguaje de la póliza no adolece de ambigüedad y que surge de éste claramente que la intención de las partes fue asegurar únicamente aquellos daños producto de los riesgos u ofensas que estuvieran expresamente contemplados en y cubiertos por la póliza otorgada y no los daños que fueran producto de todos los posibles riesgos inherentes al negocio del asegurado.
Al analizar dichos planteamientos a la luz de la normativa anteriormente expuesta, resulta evidente que en el caso de autos existía controversia de hechos en tomo a cuál fue la verdadera intención y propósito de las partes al vender el asegurador y al comprar el asegurado una cubierta específica que cubriera unos riesgos particulares que constituían la causa del contrato. Es decir, si, en efecto, Cigna tenía pleno conocimiento de los riesgos que se interesaban asegurar cuando negoció y otorgó la póliza en cuestión, y si por estar consciente de ello, le exigió al aquí apelante el pago de una prima sustancial de $20,337 en consideración a los riesgos asegurados. Tal controversia de hechos, en ausencia de estipulación y acuerdo, no puede ser dilucidada sin una vista plenaria. Nos reiteramos en que no es propicia la utilización del mecanismo procesal de la sentencia sumaria en aquellos casos en los que existen elementos subjetivos de intención en controversia Soto v. Hotel Caribe Hilton, supra, pág. 311. Tal existencia de controversia de hechos se hace patente al considerar la declaración jurada del señor Humberto Donato Brugueras, en la que declaró que “[djediqué mucho tiempo a explicarle a los oficiales de Cigna y Ocaso Insurance Agency la naturaleza exacta de los negocios de El Monóculo, Inc. Se les explicó detalladamente las funciones a las que se dedicaba y se dedica dicha empresa”. Asimismo, declaró que “[e]n consideración de la alta prima recibida, Cigna acordó asegurar consciente en todo momento de la exposición del riesgo a la empresa a El Monóculo, Inc. ” No surge de los autos que estos hechos hayan sido controvertidos por Cigna.
Por otro lado, Cigna, al redactar los términos y cláusulas de la póliza otorgada, omitió limitar expresamente su responsabilidad en casos como el de autos, en los que, como resultado de la intervención con el público, se le causara daños a alguna persona durante la grabación de alguna de las bromas del programa “Te Veo”. De esa forma, Cigna no dio suficiente aviso al aquí apelante de los riesgos cubiertos y no cubiertos por su póliza en el caso particular de programas como “Te Veo”, en los que era de esperarse este tipo de reclamaciones por la interacción constante que se tiene con el público.
Finalmente, debemos aquí señalar que somos conscientes de la prohibición contenida en el Art. 11.020 del Código de Seguros, 26 L.P.R.A. sec. 1102, el que dispone que no se asegurará a ninguna persona contra las consecuencias penales de un delito. Es decir, y como bien ha expresado el Tribunal Supremo, “nuestro Código de Seguros, tanto en la frase “suceso incierto” como en la prohibición del Art. 11.020, encama el principio fundamental de que las pólizas cubren pérdidas fortuitas y no las provocadas intencionalmente por el asegurado”. Sahar Latach v. Seguros Triple S, Inc., _ D.P.R. _, 99 J.T.S. 46, a la pág. 807. Se pretende evitar que una persona utilice el contrato de seguro para lucrarse de su conducta intencional tipificada como delito. Ahora bien, en aquellos casos en que la conducta causante del daño es esencialmente negligente y no criminal, determinación que tendrá que ser hecha por el foro de instancia, se ha reconsiderado que ello no constituye impedimento para reclamar contra la aseguradora, Morales Garay v. Roldán Coss, 110 D.P.R. 701, (1981). Observamos aquí que entra en juego un elemento de intención que será determinante en la final disposición de la controversia.
De otra parte, en el caso que nos ocupa la aquí apelante negó toda alegación de la demanda dirigida a imputar actuación o conducta delictiva. Tampoco surge de los autos que se haya llevado ante el foro recurrido estipulación de partes; pronunciamiento judicial alguno en tomo a la naturaleza delictiva del acto imputado; o *871 base que permita determinar, sumariamente, el efecto y alcance legal de tal actuación, ello como base para activar la cláusula de exclusión invocada por Cigna. Evidentemente, las partes no colocaron al foro de instancia, ni lo estamos nosotros, en condición de dirimir sumariamente dichos extremos como base para desestimar la demanda contra tercero instada contra Cigna. Con este limitado alcance, no podría el foro de instancia resolver sumariamente que la Sección 2.a. (3) de la Cubierta B de la Póliza, la que dispone que si el asegurado causa daños al violar intencionalmente un estatuto penal, tales daños no estarán cubiertos bajo la póliza, constituía base para decretar la desestimación de la demanda de tercero instada por los aquí apelantes. Tal efecto y alcance tendrá que determinarse a la luz de la totalidad de los hechos y circunstancias que culminaron con la actuación imputada, base para la acción instada por la demandante Daisy Sánchez Sánchez. Estos están en controversia y son materiales para la final disposición de la demanda contra tercero. Se trata, pues, de otro extremo fundamental que no podía ser adjudicado mediante el vehículo procesal de la sentencia sumaria.
Una vez más, nos reiteramos en que la sentencia sumaria sólo debe ser concedida en casos claros, cuando el tribunal tenga ante sí la verdad sobre todos los hechos esenciales, y “cuando el promovente ha establecido su derecho con claridad y ha quedado demostrado que la otra parte no tiene derecho a recobrar bajo cualquier circunstancia que resulte discernible de las alegaciones que no hayan sido refutadas por la evidencia presentada con la moción.” Corp. Presiding Bishop CJC of LDS v. Purcell, supra, págs. 720-721. Tal no es la situación en el caso que nos ocupa. Resulta procedente, en consecuencia, expedir el auto solicitado para dictar sentencia revocatoria de la apelada y ordenar así la reinstalación de la demanda contra tercero y la continuación de los procedimientos en forma consistente con lo ahora resuelto.
IV
Por los fundamentos antes expuestos, se expide el auto solicitado para dictar sentencia revocatoria de la Sentencia Sumaria Parcial emitida por el foro de instancia. En tal virtud se reinstalaron las alegaciones de las partes en lo que respecta a la demanda contra tercero y se ordena la continuación de los procedimientos en forma consistente con lo aquí resuelto.
Lo acuerda y manda el Tribunal, y así lo certifica la señora Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General
ESCOLIOS 2000 DTA 42
1. Felipe Ramos Rosa et. als. v. Telemundo CATV, Inc. et. als., Civil No. 93-1036, acción presentada en la Corte de Distrito de los Estados Unidos para el Distrito de P.R., Apéndice del Recurso, págs. 139-144.
2. Véase Moción en Oposición de Sentencia Sumaria, Apéndice del Recurso, págs. 131-132 y 139.
3. Póliza de Seguro, Apéndice del Recurso, págs. 13 y 19.
4. Véase sección l.b. (1) de la Cubierta B sobre “Personal and Advertising Injury Liability”, Apéndice del Recurso, pág. 19.
5. El Endoso A lee como sigue:

“In consideration of the premium charged, this endorsement modifies insurance provided under the following:

Coverage B. Personal and Advertising Injury Liability

Paragraph l.b.(l)

*872
b. This insurance applies to:

(1) “Personal Injury” caused by and [sic] Offense arising out of your business, excluding advertising or publishing done by or for you. ”

6. Esta demanda fue presentada originalmente el 8 de agosto de 1997, pero la misma fue enmendada el 21 de mayo de 1998. Véase Demanda, Apéndice del Recurso, pág. 128, y Demanda Enmendada, Apéndice del Recurso, pág. 154.
7. Contestación a la Demanda Enmendada, Apéndice del Recurso, pág. 162.
8. Demanda contra Tercero, Apéndice del Recurso, pág. 61.
9. Contestación a Demanda contra Tercero, Apéndice del Recurso, pág. 148.
10. En apoyo de su contención, Cigna acompañó su escrito con copia de la póliza de seguros suscrita por las partes y con copia de la demanda original con el fin de que el tribunal de instancia pudiera comparar las alegaciones de la demanda con las cláusulas aplicables de la póliza de seguros y pudiera determinar si, en efecto, las alegaciones de la demanda contenían alguna reclamación que potencialmente pudiera haber estado cubierta por la póliza. Moción de Sentencia Sumaria, Apéndice del Recurso, pág. 64.
11. La estructura básica de cubierta conocida como “a todo riesgo” declara la intención de cubrir todos los riesgos objeto del seguro, excepto los expresamente excluidos. Meléndez Piñero v. Levitt & Sons of P.R., 129 D.P.R. 521, 536 (1991).
12. En lo aquí pertinente, véase Póliza de Seguro 41PR5192, Sección I, Cobertura A (1a), Apéndice del Recurso a la pág. 16. Véase, además, 2 Long, The Law of Liability Insurance, Sec. 11A.100 [1], pág. 11A-33 (1992).
13. Véase Póliza de Seguro, Sección I, Cobertura A (2a-n), Apéndice del Recurso, págs. 16-19.
14. El artículo 1239 del Código Civil, 31 L.P.R.A. see. 3477 dispone que “[e]l uso o la costumbre del país se tendrá en cuenta para interpretar las ambigüedades de los contratos, supliendo en éstos la omisión de cláusulas que de ordinario suelen establecerse. ”
15. El artículo 1240 del Código Civil, 31 L.P.R.A. sec. 3478, dispone que “[l]a interpretación de las cláusulas obscuras de un contrato no deberá favorecer a la parte que hubiese ocasionado la obscuridad”.
16. Véase Art. 11.250 del Código de Seguro, 26 L.P.R.A. sec. 1125.
17. La fijación de las primas para la cubierta SCRG sigue un procedimiento especial, en el que la parte interesada solicita la póliza por medio de un formulario en el que detalla las operaciones que desea incluir en la cubierta. Luego de que la compañía recibe dicho formulario, la aseguradora hace un análisis de los riesgos previsibles y establece una prima que los refleje adecuadamente. Una vez hecho este análisis, si el solicitante está de acuerdo con la prima fijada, se procede a suscribir el contrato. Soc. de Gananciales v. Serrano, supra, pág. 849.
18. Recurso de Apelación, págs. 10-13.