Lino Roldán Medina, Etc., demandantes y recurridos, *v.*
Kenneth Serra, Etc., demandados y recurrentes.

*Número:* R-76-193      *Resuelto:* 30 de diciembre de 1976

508

*José Roberto Lugo,* abogado de la demandada Federal Insurance Co., *José A. Rivera Mercado* y *Ulpiano Falcón Matos,* abogados de los recurridos.

EL JUEZ ASOCIADO SEÑOR IRIZARRY YUNQUÉ emitió la opinión del Tribunal.

Al dictar sentencia que declaró con lugar una demanda por daños y perjuicios como consecuencia de un accidente automovilístico, el tribunal condenó al demandado, como causante del accidente, y a su aseguradora, a pagar $54,500 a los demandantes. De esa cantidad, corresponde a la aseguradora pagar $5,000, límite máximo de cubierta bajo la póliza. El tribunal determinó, además, que los demandados fueron temerarios al defenderse contra la acción y condenó a ambos—asegurado y aseguradora—a pagar a los demandantes solidariamente, $5,500 por concepto de honorarios de abogado, más intereses legales sobre la totalidad de la suma adjudicada en la sentencia, a computarse desde la fecha en que se interpuso la demanda. La compañía aseguradora ha recurrido ante nos. Impugna la determinación de que fue temeraria, y alega que, de haberlo sido, respondería de intereses legales a computarse únicamente sobre $5,000, que es su límite de responsabilidad bajo la póliza, y no sobre la totalidad de la suma adjudicada en la sentencia. No tiene razón.

En horas de la noche del 5 de noviembre de 1971 un automóvil, conducido por Kenneth Serra chocó contra otro automóvil, en que viajaba como pasajera Mildred Roldán Torres, joven estudiante universitaria. Serra desobedeció la luz roja de un semáforo e irrumpió y chocó contra el otro automóvil en momentos en que éste cruzaba, con luz verde a su favor, por la avenida Ponce de León en Santurce. La violencia del impacto causó que el automóvil en que viajaba Mildred se volcase, sufriendo ella tres fracturas de la pelvis, fractura del fémur izquierdo, y serias lesiones internas, entre ellas, amputación traumática del tubo de falopio izquierdo, todo lo cual requirió prolongado y doloroso tratamiento médico y hospitalización en varias ocasiones, produjo un acortamiento de una de sus extremidades y serios impedimentos físicos e intensas angustias mentales a dicha joven, quien a causa de ello perdió su año escolar en la Universidad de Puerto Rico.

La investigación del accidente practicada por la Federal Insurance Company, aseguradora del automóvil de Serra, estableció que éste fue responsable del accidente. No obstante, al contestar la demanda que en julio de 1972 presentaron Mildred, sus padres y dos hermanas de ella en reclamación de indemnización por daños, la Federal Insurance y su asegurado negaron la alegación de negligencia y se opusieron a la reclamación de los demandantes. La Federal Insurance alegó como defensa afirmativa que el accidente fue causado por el conductor del automóvil en que viajaba Mildred, a quien imputó que se aproximó a la intersección "a mayor velocidad y sin detenerse en la luz roja que hay en la intersección donde ocurrió el accidente."

No hay base alguna en los autos que nos permita revisar la determinación del tribunal de instancia de que los demandados fueron temerarios. Por el contrario, nuestro examen de los autos reafirma tal determinación. La investigación hecha por la compañía aseguradora reveló que Serra fue

responsable del accidente. La compañía pagó al dueño del otro automóvil los daños causados a dicho vehículo como resultado del accidente. Pagó, además, a otra reclamante que también viajaba en el automóvil en que iba Mildred el máximo de su cubierta—$5,000—en una transacción que mereció la aprobación del tribunal sentenciador en marzo de 1974. El 31 de octubre de 1974, más de dos años después de estar litigando contra la demanda que aquí nos ocupa, hizo una oferta de sentencia para consignar a favor de los demandantes los $5,000 importe máximo de cubierta bajo la póliza. Dicha oferta se condicionó, como única responsabilidad adicional, al pago de las costas devengadas hasta entonces, "sin necesariamente admitir nada a favor ni en contra de ninguna de las partes en el presente litigio." Esta oferta fue retirada luego de oponerse a ella los demandantes a menos que se impusiera a dicha demandada el pago de intereses a partir de la presentación de la demanda y honorarios de abogado, por entender que no la relevaba de su temeridad incurrida hasta entonces.

Nuestra jurisprudencia sobre el particular es clara. Una compañía aseguradora se libera de los efectos de la temeridad si, persuadida por su investigación de que el accidente se debió a la negligencia de su asegurado, así lo informa al tribunal en su primera alegación, independientemente del criterio del asegurado. *Vda. de Passalacqua* v. *Cancel*, 90 D.P.R. 501, 503 (1964); *U.S. Casualty Co.*, v. *Tribunal Superior*, 89 D.P.R. 785, 789 (1964). En tal caso, si conforme a su estimación de los daños, la compañía aseguradora estima que su valor excede los límites de su responsabilidad bajo la póliza, es su deber consignar el importe máximo que venga obligada a pagar bajo la póliza. Con ello se demuestra buena fe y se ayuda a una más pronta solución del pleito, y se exime la aseguradora de ser hallada incursa en temeridad. La oferta de sentencia es un medio apropiado para lograr ese propósito, *Meléndez* v. *Levitt & Sons of P.R.*,

104 D.P.R. 797 (1976), pero ésta debe hacerse oportunamente, es decir, en la primera oportunidad. La oferta de sentencia no borra la temeridad incurrida por un litigante hasta el momento en que es hecha. Es a lo sumo un atenuante a ser considerado al sancionar su temeridad.

Veamos el aspecto de los intereses. Independientemente de si un demandado ha sido temerario, viene éste obligado a pagar los intereses, al tipo legal, que se acumulan sobre la cuantía adjudicada por sentencia, a computarse dichos intereses desde la fecha de la sentencia y hasta la fecha en que el importe de la sentencia sea satisfecho. Art. 1649 del Código Civil, 31 L.P.R.A. sec. 4591.

■ Las pólizas de seguros sobre automóviles contienen una cláusula, contenida en la póliza expedida por la Federal Insurance Company que aquí nos ocupa, conocida en los Estados Unidos como *standard interests clause*, y que llamaremos la cláusula sobre intereses a pagar. Dispone dicha cláusula que la compañía aseguradora, en relación con cualquier pleito instado contra el asegurado, se obliga a pagar:

". . . todas las costas que se impongan contra el asegurado en tal pleito y todos los intereses que se acumulen luego de que se dicte sentencia hasta que la compañía haya pagado o efectuado o depositado en corte aquella parte de la sentencia que no exceda los límites de responsabilidad de la compañía bajo la póliza." [1]

■ Esta cláusula ha sido interpretada por algunas jurisdicciones en los Estados Unidos para limitar los intereses a pagar por la compañía aseguradora a aquellos que se acumulen sobre el principal de que responde la compañía bajo la póliza. *Snider* v. *Farm Mutual Auto Ins. Co.*, 360 F.Supp. 929 (1973); *Coveney* v. *Nationwide Mutual Ins. Co.*, 295

---

[1] El texto en inglés dice así:

". . . all costs taxed against the insured in any suit and all interest accruing after the entry of judgment until the company has paid or tendered or deposited in court such part of such judgment as does not exceed the limits of the company's liability thereon."

N.Y.S.2d 814 (N.Y. 1968); *Hafer* v. *Schauer*, 239 A.2d 785 (Pa. 1968); *Lehner* v. *County of Erie*, 279 N.Y.S.2d 581 (N.Y. 1967); *Crook* v. *State Farm Mutual Auto Ins. Co.*, 112 S.E.2d 241 (S.C. 1960).[2] Se ha basado dicha interpretación en que la cláusula no es ambigua y en que obligar a la aseguradora a pagar intereses sobre la suma total dispuesta como indemnización por la sentencia equivaldría a imponer a la aseguradora una responsabilidad vicaria.

La mayoría de las jurisdicciones estadounidenses se pronuncia, sin embargo, en contra de tal interpretación. *Cates* v. *Moyses*, 394 N.W.2d 380 (Mich. 1975); *In Re Estate of Tichota*, 215 N.W.2d 885 (Neb. 1974); *Stamps* v. *Consolidated Underwriters*, 493 P.2d 246 (Kan. 1972); *Grain Dealers Mutual Ins. Co.* v. *Quarrier*, 175 So.2d 83 (Fla. 1965); *Gass* v. *Carducci*, 203 N.E.2d 289 (Ill. 1964); *Ferro* v. *State Farm Mutual Auto Ins. Co.*, 169 So.2d 417 (La. 1964); *Southern Farm Bureau Casualty Ins. Co.* v. *Robinson*, 365 S.W.2d 454 (Ark. 1963); *Powell* v. *T. A. & C. Taxi, Inc.*, 188 A.2d 654 (N.H. 1963); *Allstate Ins. Co.* v. *Warren*, 125 So.2d 886 (Fla. 1961); *Haskell* v. *Siegmund*, 170 N.E.2d 393 (Ill. 1960).[3] Entienden que la cláusula es ambigua y debe por tanto interpretarse contra la compañía, y que, como la aseguradora controla la litigación y, retrasando el pago puede influir en la acumulación de intereses, debe ser responsable por tales retrasos.

Los tratadistas se inclinan a favor de la segunda solución, por considerarla más justa. Véanse 8 Appleman, *Insurance Law and Practice*, sec. 4899; Mathew Bender, *Personal Injury Newsletter*, vol. 19, no. 5, 1975, págs. 55–56. Véase, además, 15 Couch, *Insurance* 2nd, sec. 56:36, págs. 705–706.

---

[2] Para lista de casos más extensa, véase 76 A.L.R.2d 994, *Later Case Service* 76 A.L.R.2d 73–76, págs. 492–493.

[3] Para lista de casos más extensa, véase 76 A.L.R.2d 994, *Later Case Service* 76 A.L.R.2d 73–76, págs. 492–493.

A nuestro juicio la cláusula es ambigua y se presta, como lo demuestran los casos citados, a diferentes interpretaciones. Siendo así, y por tratarse de un contrato de adhesión, debe interpretarse de la manera menos favorable a la compañía aseguradora. *Ferrer* v. *Lebrón García*, 103 D.P.R. 600 (1975); *Rivera* v. *Insurance Co. of P.R.*, 103 D.P.R. 91 (1974); *Rosario* v. *Atl. Southern Ins. Co. of P.R.*, 95 D.P.R. 759 (1968); *Pérez Escolar* v. *Collado*, 90 D.P.R. 806 (1964); *León Ortiz* v. *Comisión Industrial*, 101 D.P.R. 781 (1973). Se fortalece la aplicación de la norma de hermenéutica en este caso si consideramos que la póliza que aquí nos ocupa está redactada en el idioma inglés, no obstante haber sido expedida para regir en Puerto Rico, en que el vernáculo es el español.

■ Nos parece, además, que la existencia misma de la cláusula evidencia su propósito. Sería inconcebible si no existiera la cláusula, que su ausencia implicase que el asegurado debe pagar los intereses que se acumulen sobre aquella parte de la sentencia de que deba responder la compañía aseguradora. Dicho de otro modo, sin que exista la cláusula, la aseguradora viene siempre obligada a pagar los intereses que se adeuden sobre la parte de la sentencia de que ella responda. El propósito obvio de la cláusula es, por tanto, dar una protección al asegurado que sin la cláusula no existiría, a saber, responsabilizarse la compañía aseguradora del pago de todos los intereses que se acumulen sobre la totalidad de la sentencia, de cuya responsabilidad responde la aseguradora hasta el momento en que pague. Efectuado el pago por la aseguradora son de cuenta del asegurado los intereses que desde entonces se acumulen sobre la parte insoluta de la sentencia que sea de su responsabilidad por exceder el límite de la póliza.

■ En cuanto a los intereses por temeridad la situación es distinta. Los intereses acumulados después de sentencia sobre la totalidad de la indemnización concedida son

de la responsabilidad de la aseguradora hasta el momento en que consigne todo lo que venga obligada a pagar por así haberse convenido en la póliza, según hemos visto. Dicho de otro modo, la obligación de la aseguradora en este sentido surge del contrato de seguros. La obligación de pagar intereses por temeridad surge, sin embargo, de la ley. A tal efecto se enmendó la Regla 44.4 de Procedimiento Civil en 1967— Ley Núm. 68 de 26 de mayo de ese año—para adicionarle el siguiente inciso:

"(e) [Interés legal.] El Tribunal también impondrá a 'la parte que haya procedido con temeridad el pago de interés legal ,desde que haya surgido la causa de acción en todo caso ,de cobro de ·dinero y desde la radicación de la .demanda, en casos de daños y perjuicios, a computarse sobre la cuantía de la sentencia, excepto cuando la parte .demandada sea el Estado Libre Asociado ,de Puerto Rico, sus agencias, las corporaciones públicas, o los municipios ,de Puerto Rico, disponiéndose que las .disposiciones ·de este inciso solamente serán aplicables a las .causas de acción que surgieren con posterioridad a la fecha ,de su aprobación."

El tribunal sentenciador puede encontrar temeraria a la aseguradora o al asegurado, o a ambos, e imponer el pago de intereses, conforme al citado inciso, desde la interposición de la demanda. Pero la ley no autoriza que tal imposición sea solidaria y no podemos ir más allá de lo dispuesto en la ley por flagrante que nos parezca la temeridad incurrida. (4)

---

(4) La manifiesta temeridad de la Federal Insurance Company queda evidenciada en las siguientes determinaciones que sobre este aspecto formuló, luego de una vista sobre el particular, el tribunal de instancia.

"1. Don Roberto Sueiro, Gerente de Reclamaciones de la codemandada Federal Insurance Company, tuvo conocimiento del accidente a que se contrae la demanda desde varios días después de la ocurrencia del mismo y ordenó, como era de costumbre, la investigación del caso a su subalterno Sr. Frank Rolón.

"2. El Sr. Frank Rolón completó la investigación y concluida la misma celebró una conferencia con el Sr. Sueiro. En la misma el Sr. Sueiro advino en conocimiento de la seriedad del caso y dió instrucciones específicas para que no se pagara ninguna reclamación en la esperanza y con

No pasamos por alto que generalmente es la compañía aseguradora la que controla la litigación del caso suyo y de su asegurado. Pero no puede ser responsabilizada por intereses impuestos a base de temeridad que excedan los computados sobre las sumas que venga obligada a pagar bajo

---

el propósito de que los perjudicados no formularan reclamación y sus derechos prescribieran, redundando ello en beneficio de la compañía aseguradora y por ende a su asegurado.

"3. La compañía aseguradora, para mayo de 1972, determinó cuál era el interés económico del dueño del vehículo Mazda, Sr. Leandro Saliva Guilbot, que había estado envuelto en el accidente con su asegurado Kenneth Serra, aplicó un por ciento de depreciación por el tiempo en que dicho perjudicado había utilizado su vehículo y satisfizo la diferencia entre el interés económico del Sr. Saliva en el vehículo y la depreciación.

"4. Desde el mes de mayo de 1972 y, en una forma más precisa, en el mes de julio de 1972, el Sr. Sueiro, por las conversaciones sostenidas con su investigador y por el informe que le hiciera este último al Sr. Sueiro, tuvo pleno conocimiento de que su asegurado había sido negligente y así también tuvo conocimiento de que los daños sufridos por la demandante eran de naturaleza grave.

"5. Al radicarse la demanda, la misma fué recibida por el Sr. Sueiro en representación de la demandada Federal Insurance Company y fue referida a los Lcdos. Segurola & Montalvo conjuntamente con varios documentos. El señor Sueiro discutió con sus abogados las alegaciones de la demanda y autorizó las contestaciones que se dieron a la misma. Estas contestaciones nunca fueron enmendadas y dichas contestaciones fueron defendidas a lo largo de todo el proceso de la vista del caso. El Sr. Sueiro, representante de la codemandada Federal Insurance Company, nunca instruyó a sus abogados que depositaran el monto de la póliza y que dicha compañía renunciaría a defenderse. Todo lo que hizo fue ofertas del límite de la póliza, en la mayor parte de las veces exigiendo un relevo total de la responsabilidad de la compañía aseguradora y de su asegurado y una oferta de sentencia a través de la Regla 35.2, a cuya oferta de sentencia el Tribunal ordenó su retiro por oposición formulada por el otro codemandado Dr. Kenneth Serra y por oposición fundamentada de la parte demandante. Luego de dicha oferta de sentencia, la codemandada Federal Insurance Company se defiende durante todo el juicio, sin usar ningún procedimiento para relevarse de responsabilidad.

"6. La demandada Federal Insurance Company mantuvo en todo momento el control de la defensa del caso a través de su Gerente de Reclamaciones quien estuvo presente en el Tribunal en todo momento aportando información a su representación legal a la luz del resultado de su investigación para establecer la no existencia de negligencia de su asegurado y por ende de ella. Su actitud demuestra que actuó en forma contumaz y con crasa temeridad."

la póliza. Esta misma interpretación la hallamos en las jurisdicciones estatales. Véanse *Cates* v. *Moyses*, supra, y *Stone* v. *Fawcett*, 234 N.W.2d 577 (Mich. 1975), que resuelven que los intereses devengados durante el período anterior a la sentencia que se impongan a la aseguradora están limitados a aquellos que correspondan a la cuantía de la sentencia que no exceda de los límites de la póliza, pero que los que se deriven después de dictada sentencia se impondrán sobre la totalidad de ésta hasta que la aseguradora satisfaga su parte de la sentencia. Así debe serlo, pues la póliza de seguros se refiere específicamente a los intereses acumulados *después* de la sentencia.

Veríamos con simpatía que en aquellos casos en que la aseguradora sea responsabilizada por la litigación temeraria de un pleito en que ella tuviera el control venga obligada a pagar los intereses dispuestos por la Regla 44.4(e) computados sobre la totalidad de la indemnización que ella y su asegurado deban pagar. El de autos sería un caso que justificaría tal acción. Pero tal norma requeriría acción legislativa. Mientras tanto, la condena en honorarios de abogado y en particular su cuantía pueden servir de sanción acorde al grado de temeridad incurrida, los cuales deben ser satisfechos por la compañía aseguradora. *Insurance Co. of P.R.* v. *Tribunal Superior*, 100 D.P.R. 405, 411 (1972); *Montañez Cruz* v. *Metropolitan Cons. Corp.*, 87 D.P.R. 38 (1962).

*Se modificará la sentencia del tribunal de instancia a los únicos fines de imponer a la Federal Insurance Company los intereses por temeridad sobre la suma de $5,000 desde la fecha de presentación de la demanda hasta la fecha en que se dictó sentencia, y en adición a ello los intereses al tipo legal dispuestos por el Art. 1649 del Código Civil, computados sobre la totalidad de la sentencia y sobre la cuantía de honorarios de abogado, desde que ésta se dictó y hasta que dicha compañía aseguradora hubiere pagado o consignado aquella parte que le corresponda satisfacer bajo la póliza.*

Los Jueces Asociados Señores Dávila y Martín concurren en el resultado.