

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Damaris Molina Maldonado y otros<br><br>    Peticionarios<br><br>               v.<br><br>Luis A. Rivera Torres y otros<br><br>    Recurridos | Certiorari<br><br>2010 TSPR 34<br><br>178 DPR \_\_\_\_ |

Número del Caso: CC-2008-410

Fecha: 10 de marzo de 2010

Tribunal de Apelaciones:

        Región Judicial de Arecibo/Fajardo/Aibonito Pane    l IX

Jueza Ponente:
                Hon. Yvonne Feliciano Acevedo

Abogados de la Parte Peticionaria:

                Lcdo. Harold D. Vicente-Colón
                Lcdo. Sergio Criado Mangual

Abogado de la Parte Recurrida:

                Lcdo. Miguel A. Colón Hernández

Materia: Consignación de Pago Sentencia

Este documento constituye un documento oficial del    Tribunal Supremo que está sujeto a los cambios y correcciones del pr    oceso de compilación y publicación oficial de las decisiones    del Tribunal. Su distribución electrónica se hace como un servicio p    úblico a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Damaris Molina Maldonado y
otros

        Peticionarios                    CC-2008-410

            v.

Luis A. Rivera Torres y otros

        Recurridos

SENTENCIA

San Juan, Puerto Rico, a 10 de marzo de 2010.

La Sra. Damaris Molina Maldonado por sí y en representación de sus hijas y el Sr. Héctor Camacho Cosme nos solicitan que revisemos una Sentencia emitida por el Tribunal de Apelaciones. En la referida Sentencia, el foro apelativo intermedio dictaminó que la co-demandada, Cooperativa de Seguros Múltiples, en adelante C.S.M., no tiene que pagar los intereses pre-sentencia que sobrepasen el límite de cubierta por ocurrencia de una póliza de seguro aunque el Tribunal de Primera Instancia la haya declarado temeraria.

I

El 19 de marzo de 2001, a las cinco y cuarenta de la madrugada (5:40 am), el Sr. Nelson Luis Camacho Alvarado se encontraba detenido entre el área dedicada para paradas de emergencias (paseo) y el área verde de la carretera número 22, en dirección de este a oeste, en el kilómetro 78.4 del Municipio de Arecibo. Ello, debido a que su vehículo de motor confrontó problemas mecánicos. Mientras el señor Camacho Alvarado se encontraba en el área indicada, el Sr. Luis Rivera Torres conducía un vehículo de motor marca Dodge Van Ram, cuyo titular registral es el Sr. Domingo Rivera Torres, hermano del conductor.

El agente José Cruz Morán, quien estaba destacado en la investigación de accidentes de tránsito, se encontraba patrullando por la mencionada carretera con el Sargento Hernández y vieron el vehículo del señor Camacho Alvarado detenido en el área de emergencia. Luego, pasados unos quince (15) minutos, el agente Cruz Morán recibió una comunicación por radio indicándole que en el área donde se encontraba el vehículo ocurrió un accidente.

Cuando llegaron al área del accidente, observaron el cuerpo sin vida del señor Camacho Alvarado yaciendo sobre el pavimento. El señor Luis Rivera Torres se encontraba en el lugar y le informó a los agentes que perdió el control del vehículo e impactó al vehículo del señor Camacho

Alvarado y que éste salió corriendo tratando de protegerse pero lo atropelló ocasionándole la muerte en el acto.

Luego del accidente, el agente Cruz Morán preparó el informe del accidente de tránsito y el de persona muerta. Para realizar el informe se llevó a cabo una investigación en la cual se tomaron las medidas del área, la ubicación de los vehículos, así como el lugar donde yacía el cuerpo del señor Camacho Alvarado.

El 4 de marzo de 2002, la señora Molina Maldonado, por sí y en representación de sus hijas y el señor Camacho Cosme presentaron una demanda en contra de los señores Rivera Torres por los daños y perjuicios sufridos por éstos a raíz de la muerte del señor Camacho Alvarado.[1] El 29 de octubre de 2002, el co-demandado, señor Luis Rivera Torres, presentó su contestación a la demanda. En ésta, negó haber incurrido en cualquier tipo de responsabilidad por el accidente así como por cualquier daño ocasionado por éste. La demanda fue enmendada para incluir a la C.S.M. como parte demandada. Ello, por existir para la fecha del accidente una póliza de seguro expedida a nombre del co-demandando, señor Luis Rivera Torres, la cual proveía cubierta de responsabilidad civil.

---

[1] La señora Molina Maldonado es la viuda del occiso, con quien contrajo nupcias en el 1995. Durante el matrimonio procrearon dos (2) hijas, ambas menores de edad. El señor Camacho Cosme era tío del occiso, pero quedó probado que éste fungió como su padre de crianza y que mantenian estrechas relaciones familiares.

Durante el juicio, la parte demandante demostró que el difunto, Camacho Alvarado, laboraba en "Master Mix of Puerto Rico" donde desempeñaba varias funciones. La co-demandante, señora Molina Maldonado, labora como ama de casa y el único sustento del hogar eran los ingresos que su difunto marido devengaba. Se demostró que el occiso Camacho Alvarado era un hombre familiar cuyas prioridades eran en beneficio de ésta.

El informe pericial económico, estableciendo la partida por lucro cesante, fue estipulado por las partes. Por ello, no fue necesaria la declaración del perito durante el juicio. El referido informe establece que, el lucro cesante por la muerte del señor Camacho Alvarado asciende a la cantidad de $187,127.00. También, el informe realizado por el agente Cruz Morán fue estipulado por las partes y presentado como evidencia durante el juicio y nunca se suscitó controversia alguna sobre tal informe.

En el juicio quedó probado que la única causa adecuada que provocó la muerte del esposo, padre y sobrino de los demandantes fue la negligencia del señor Luis Rivera Torres por conducir sin precaución y a exceso de velocidad. Por ello, el 6 de julio de 2006, el Tribunal de Primera Instancia emitió una Sentencia a favor de la parte demandante concediéndoles las cuantías indemnizatorias siguientes: a la señora Molina Maldonado $20,000.00; a sus hijas $100,000.00 a cada una; al señor Camacho Alvarado

$25,000.00; pérdida de ingresos de la señora Molina Maldonado y de las niñas Camacho Molina $187,127.00; pérdida del automóvil $3,500.00 y $1,600.00 por gastos fúnebres. La suma total de los daños ascendió a $437,227.00.

El Tribunal de Primera Instancia encontró temerarios a los demandados por haber negado obstinadamente la negligencia que provocó el accidente, por lo que los condenó a pagar $15,000.00 por concepto de honorarios de abogado. Es pertinente mencionar que los demandados no aportaron ningún tipo de prueba para controvertir la alegación de negligencia la cual el Tribunal de Primera Instancia, según expresó en su Sentencia, quedó demostrada incontrovertiblemente. Los demandados no presentaron ningún recurso post-sentencia y la sentencia advino final y firme.

El 5 de octubre de 2006, la C.S.M. presentó una moción para consignar en el Tribunal de Primera Instancia la cantidad de $500,000.00. Tal cantidad corresponde al límite máximo de cubierta por ocurrencia pactado en la póliza de seguro. La C.S.M. alegó que ese era el tope de su responsabilidad y que mediante la consignación extinguía su obligación. El 20 de octubre de 2006, los demandantes presentaron una moción en oposición a la moción de consignación e igualmente solicitaron la ejecución de la Sentencia. El 27 de noviembre de 2006, el Tribunal de Primera Instancia declaró NO HA LUGAR la moción en

oposición de los demandantes. Ello, por entender que la consignación realizada por la C.S.M. procedía en derecho.

Inconformes con tal determinación, los demandantes acudieron ante el Tribunal de Apelaciones mediante *certiorari* alegando que, además de la indemnización antes mencionada, procedía conceder las cuantías siguientes: intereses pre-sentencia $170,000.00; honorarios de abogados $15,000.00; intereses post-sentencia $22,304.00; intereses *per diem* $111.52. Por ello, la suma total reclamada por los demandantes asciende a $645,210.06. El Tribunal de Apelaciones acogió el recurso y dispuso, en parte, lo siguiente:

> [S]e le ordena a la Cooperativa el pago de honorarios de abogado por temeridad aunque excedan el límite de la póliza. Además, la Cooperativa deberá pagar los intereses legales durante el periodo anterior a la sentencia sobre la cuantía que no excedan de los límites de la póliza, pero los que se deriven después de dictada la sentencia, los sufragará, aunque excedan tales límites de la póliza.

En cumplimiento con el mandato del Tribunal de Apelaciones, el Tribunal de Primera Instancia procedió a celebrar una vista para discutir la moción sobre ejecución de sentencia. En la vista quedó demostrado que la única controversia existente entre las partes son los intereses pre-sentencia. El foro judicial primario le solicitó a las partes que prepararan memorandos para evaluar si la consignación fue conforme a Derecho. Evaluados los respectivos escritos, el Tribunal de Primera Instancia

determinó que los demandados adeudaban la cantidad de $102,816.78 por concepto de intereses pre-sentencia e intereses post-consignación sobre el balance adeudado.

Inconforme con tal determinación, la C.S.M. presentó una moción de reconsideración la cual fue declarada NO HA LUGAR. Por ello, presentó un recurso de *certiorari* ante el Tribunal de Apelaciones alegando que el Tribunal de Primera Instancia incurrió en el error siguiente:

> Erró el T.P.I. al no observar las directrices de éste (sic) Tribunal en su sentencia revocatoria y conceder intereses presentencia en exceso de los límites de la póliza emitida por la peticionaria.

Los demandantes se opusieron a la expedición del recurso de *certiorari*. No obstante, el Tribunal de Apelaciones expidió y revocó el dictamen emitido por el Tribunal de Primera Instancia. Inconformes con tal determinación, los demandantes y aquí peticionarios nos solicitan que revoquemos la Sentencia emitida por el foro apelativo intermedio. Ello, por entender que el Tribunal de Apelaciones incurrió en el error siguiente:

> **Erró el Tribunal de Apelaciones al determinar que la C.S.M. solamente es responsable por el pago de los intereses pre-sentencia hasta el límite de su póliza en contravención a su propia determinación y a la jurisprudencia establecida por este Tribunal Supremo.**

II

Se revoca la Sentencia recurrida.

Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Presidente señor Hernández Denton

emite Opinión de Conformidad a la cual se une la Jueza Asociada señora Rodríguez Rodríguez. El Juez Asociado señor Rivera Pérez emite Opinión de Conformidad a la cual se unen la Jueza Asociada señora Pabón Charneco y el Juez Asociado señor Kolthoff Caraballo. La Jueza Asociada señora Fiol Matta concurre con el resultado sin opinión escrita. El Juez Asociado señor Martínez Torres inhibido.


Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Damaris Molina Maldonado
y/otros

     Peticionarios

       v.                      CC-2008-410
     Certiorari

Luis A. Rivera Torres
y/otros

     Recurridos

Opinión de Conformidad emitida por el Juez Presidente SEÑOR HERNÁNDEZ DENTON a la cual se une la Juez Asociada SEÑORA RODRÍGUEZ RODRÍGUEZ.

San Juan, Puerto Rico, a 10 de marzo de 2010.

Estamos conforme con la Sentencia emitida en el día de hoy, en tanto revoca el dictamen del Tribunal de Apelaciones, Región Judicial de Arecibo (Martínez Torres, J., Cotto Vives, J., Miranda de Hostos, J. Ponente) y reinstala la sentencia dictada por el Tribunal de Primera Instancia. No obstante, ante el claro error de derecho que cometió el foro apelativo intermedio en este caso, estimamos necesario expresarnos brevemente para recalcar la norma vigente sobre la responsabilidad de las aseguradoras por los intereses pre-sentencia de

manera que no quede duda sobre la forma en que debe ser aplicada.

En el caso de autos, el foro apelativo intermedio determinó que la aseguradora demandada, Cooperativa de Seguros Múltiples, responde por los intereses pre-sentencia solamente hasta el límite de la póliza de seguros. Inconforme con esta determinación, los demandantes acuden ante nos y solicitan que revoquemos dicha sentencia por ser contraria a la jurisprudencia de este Tribunal.

En Roldán Medina v. Serra, 105 D.P.R. 507 (1976), resolvimos que, debido a que la responsabilidad que surge de la temeridad es individual, una aseguradora responde por su conducta temeraria mientras defiende a un asegurado. A base de ello concluimos que si la cuantía de la sentencia sobrepasa el límite de la póliza, entonces los intereses pre-sentencia se **calcularán** sobre dicho límite y, aunque lo sobrepasen, deberán pagarse. A tales efectos, resolvimos que una aseguradora "no puede ser responsabilizada por intereses impuestos a base de temeridad que excedan los **computados** sobre las sumas que venga obligada a pagar bajo la póliza". *Íd*., págs. 516-517. Es decir "los intereses devengados durante el periodo anterior a la sentencia que se impongan a la aseguradora están limitados a aquellos que **correspondan** a la cuantía de la sentencia que no exceda de los límites de la póliza." *Íd*. pág. 517. De hecho, allí modificamos la sentencia del tribunal de instancia para imponer a la aseguradora los intereses por temeridad sobre

el límite de la póliza, por lo que la aseguradora tuvo que pagar una cantidad mayor a lo dispuesto por ésta.

En vista de lo anterior, entendemos que el Tribunal de Apelaciones incurrió en un patente error al determinar que la Cooperativa de Seguros Múltiples es responsable de los intereses pre-sentencia solamente hasta el límite de la póliza. Evidentemente, la norma establecida en Roldán Medina v. Serra, *supra*, opera de forma idéntica cuando el monto de la sentencia es inferior al límite de la póliza, como ocurre en el caso de autos. Es decir, en este caso corresponde calcular los intereses pre-sentencia sobre el monto de la sentencia y la aseguradora deberá pagarlos, aunque el total de lo que venga obligada a pagar finalmente sobrepase el límite de la póliza.

En fin, por entender que les asiste la razón a los demandantes, procede revocar la sentencia recurrida y reafirmarnos en la normativa establecida en Roldán Medina v. Serra, *supra*.

Federico Hernández Denton
Juez Presidente

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Damaris Molina Maldonado y otros

       Peticionarios

           v.

Luis A. Rivera Torres y otros

       Recurridos

CC-2008-410

OPINION DE CONFORMIDAD DEL JUEZ ASOCIADO SEÑOR RIVERA PEREZ A LA CUAL SE UNEN EL JUEZ ASOCIADO SEÑOR KOLTHOFF CARABALLO Y LA JUEZA ASOCIADA SEÑORA PABON CHARNECO.

San Juan, Puerto Rico, a 10 de marzo de 2010.

Aunque la C.S.M. nunca cuestionó la imposición de la temeridad, para resolver la presente controversia procede discutir por qué una litigación temeraria es sancionable judicialmente. Veamos.

La temeridad es una actuación sancionada por las Reglas 44.1(d) y 44.3 de Procedimiento Civil.[2] El propósito que persiguen estas reglas es "desalentar la radicación de demandas frívolas, evitar la posposición irrazonable en el cumplimiento de las obligaciones existentes y

_____

[2] 32 L.P.R.A. Ap. III, R. 44.1(d), 44.3.

estimular el pago de las sentencias en el menor tiempo posible".[3]

Hemos expresado que una parte es temeraria cuando entabla un pleito frívolo y obliga a la parte contraria a incurrir en gastos innecesarios.[4] De igual forma, se puede incurrir en temeridad cuando una parte se defiende en un pleito de forma injustificada frente a la acción instada en su contra; **no admite su responsabilidad, obligando así a que la controversia sea dilucidada ante un tribunal en sus méritos; o cuando niega la veracidad de un hecho a pesar de éste ser de su pleno conocimiento.**[5]

Las Reglas de Procedimiento Civil,[6] sancionan entre otras cosas, a los litigantes temerarios con la imposición de intereses legales. La Regla 44.3 de Procedimiento Civil dispone dos tipos de intereses legales, estos son: intereses pre-sentencia e intereses post-sentencia. El interés post-sentencia está disponible para toda parte victoriosa, no importa si la parte contraria actuó con temeridad o no.[7] El propósito de dicha penalidad es promover que las sentencias que envuelvan cuantías monetarias sean satisfechas a la mayor brevedad posible.

---

[3] 32 L.P.R.A. Ap. III, 44.3(a).

[4] *P.R. Oil Co. v. Dayco*, 164 D.P.R. 486, 511 (2005); *Torres Ortiz v. E.L.A.*, 136 D.P.R. 556, 565 (1994).

[5] *Oficina de Ética Gubernamental v. Román González*, 159 D.P.R. 401, 418 (2003).

[6] 32 L.P.R.A. Ap. III, R. 1 *et seq.*

[7] 32 L.P.R.A. Ap. III, R. 44.3(a).

El caso de marras versa sobre una reclamación de daños y perjuicios, **en estos casos los intereses pre-sentencia concedidos a la parte victoriosa, cuando la parte contraria ha procedido con temeridad, se calculan a partir de la presentación de la demanda y hasta que se dicte sentencia.**[8] La tasa de interés aplicable será la que haya fijado la Junta Financiera del Comisionado de Instituciones Financieras al momento de emitirse la sentencia.[9] El interés pre-sentencia se fija sobre la totalidad de la sentencia sin incluir las costas ni los honorarios de abogado.[10]

En síntesis, las Reglas de Procedimiento Civil, *supra*, sancionan la litigación temeraria con el propósito de evitar inconvenientes en el buen funcionamiento de los tribunales. Lo antes expuesto, promueve una sana administración de la justicia y protege al litigante de buena fe, tratando de evitar que pase injustificadamente por un proceso judicial así como incurrir en gastos innecesarios. **Una parte temeraria asume voluntariamente el riesgo y las consecuencias que lleva el litigar un caso de esa manera.**

Debido a que la C.S.M. nunca cuestionó que el Tribunal de Primera Instancia la haya declarado temeraria, la única

---

[8] *Gutiérrez v. A.A.A.*, 167 D.P.R. 130 (2006); *Reyes v. Banco de Santander de P.R.*, 583 F. Supp. 1444 (1984).

[9] 32 L.P.R.A. Ap. III, R. 44.3(a).

[10] *Gutiérrez v. A.A.A.*, supra.

controversia ante nuestra consideración es si la sanción de pagar intereses pre-sentencia por haberse encontrado a la C.S.M. temeraria puede rebasar el límite de cubierta por ocurrencia en una póliza de seguro. Para ello, nos es forzoso discutir el alcance del deber de representación legal que una aseguradora tiene ante su asegurado. Veamos.

La finalidad en las pólizas de seguro de responsabilidad civil es que la aseguradora indemnice los daños causados por su asegurado a un tercero o a la propiedad de éste, ya sea mediando culpa o negligencia.[11] Otro de los deberes de la aseguradora es ofrecerle representación legal al asegurado en las acciones judiciales que se entablen en su contra.[12] La representación legal se torna innecesaria si la aseguradora transige la reclamación extrajudicialmente. En síntesis, el asegurado ostenta una expectativa de que en cualquier eventualidad futura en que incurra en algún acto u omisión negligente esté protegido por la póliza de seguro.[13]

El Artículo 20.010 del Código de Seguros dispone, en parte, lo siguiente: "[e]l asegurador que expidiere una póliza asegurando a una persona contra daños o perjuicios por causa de responsabilidad legal por lesiones corporales,

---

[11] Las aseguradoras no responden por los daños causados intencionalmente por un asegurado.

[12] *Pagán Caraballo v. Silva Ortiz*, 122 D.P.R. 105 (1988); *Morales v. Roldán*, 110 D.P.R. 701 (1981).

[13] 26 L.P.R.A. § 2001; *PFZ Properties v. General Accident*, 136 D.P.R. 881 (1994).

muerte, daños a la propiedad de una tercera persona, **será responsable cuando ocurriere una pérdida cubierta por dicha póliza. . .".**[14] Por ello, como norma general, el asegurador asume incondicionalmente la defensa legal de su asegurado.

Las aseguradoras tienen el deber de otorgarles representación legal a sus asegurados en pleitos que se entablen en contra de éstos últimos, siempre y cuando, el riesgo esté cubierto por la póliza de seguro.[15] Tal obligación de las aseguradoras frente a sus asegurados surge de la relación contractual existente entre éstos. La obligación es latente, no importa si las alegaciones contenidas en la reclamación son frívolas, falsas o sin fundamento alguno. La referida obligación de proveer representación legal sucumbe cuando las reclamaciones en contra de un asegurado no tienen relación alguna con los riesgos cubiertos por la póliza de seguro.[16]

Además, el Artículo 20.030 del Código de Seguros,[17] le provee a una persona que haya sufrido algún daño y/o prejuicio, por algún acto culposo o negligente, tres (3)

---

[14] *Íd.*

[15] *Torres Pérez v. Colón García*, 105 D.P.R. 616 (1977); *Vanguard Insurance v. Ruchl*, 295 Minn. 327, 332, 204 N.W. 2d 426 (1973). **Una aseguradora debe de notificar al asegurado su intención de rechazar responsabilidad y de su negativa a ofrecerle representación legal. De esta forma, se le da el tiempo necesario para que el asegurado pueda contratar una representación legal.** Appleman, *Insurance Law and Practice*, § 4686, pág. 168 (Berdal ed.)

[16] *González v. Commonwealth Insurance*, 140 D.P.R. 673 (1996); *PFZ Properties v. General Accident*, *supra*.

[17] 26 L.P.R.A. § 2003.

alternativas para dirigir el curso de acción legal a seguir, estas son: (1) dirigirse de forma directa en contra del asegurado; (2) dirigirse de forma directa en contra del asegurador; o (3) dirigirse en contra de ambos, entiéndase asegurador y asegurado.[18] **El Código de Seguros, *supra*, permite que un perjudicado entable una causa de acción sustantiva y directa en contra de una aseguradora cuando ocurre una pérdida, cubierta por la póliza de seguro, independientemente de la causa de acción en contra del asegurado, quien fue el causante del daño.**[19]

En suma, una persona que sufra daños y/o perjuicios causados por la negligencia o culpa de una persona asegurada puede entablar una acción directa en contra del culposo o negligente. No obstante, **en esta jurisdicción se permite estatutariamente que se entable una acción directa en contra de la aseguradora o en contra del asegurado y de la aseguradora simultáneamente.**[20] La forma de entablar la reclamación judicial es discrecional de la persona que haya sufrido los daños y/o perjuicios.[21] Tal proceder se fundamenta en **la responsabilidad absoluta del asegurador.**[22]

---

[18] *Íd.; Neptune v. Wackenhut Corp.*, 120 D.P.R. 283 (1988).

[19] 26 L.P.R.A. § 2003; *Trigo v. The Travelers Insurance*, 91 D.P.R. 868 (1965).

[20] 26 L.P.R.A. § 2003.

[21] *Véase, Pérez Sánchez v. Advisors Investors*, 130 D.P.R. 530 (1992); *Alonso García v. Flores Hermanos*, 107 D.P.R. 789 (1978).

[22] 26 L.P.R.A. § 2003.

Una mayoría de los estados de la Unión concurren en que la existencia de buena fe o no en la representación legal de un asegurado es inmaterial para los efectos de la responsabilidad absoluta del asegurador.[23] **Por ello, es que se permite pactar en las pólizas de seguro claúsulas en las cuales se le otorga todo el poder discrecional sobre el manejo de un caso judicial entablado en contra de su asegurado.**[24] Lo anterior, es consistente con el Artículo 20.010 del Código de Seguros, *supra*, en cuanto a la responsabilidad absoluta del asegurador y también con el Artículo 20.030, del mismo cuerpo legal referente a litigios en contra del asegurado y/o el asegurador.

**Hemos expresado que una aseguradora viene obligada a otorgarle, además de la cubierta, representación legal a un asegurado.**[25] **El incumplimiento de lo anterior conlleva la sanción del pago de las costas del litigio así como lo que el Tribunal de Primera Instancia disponga sobre honorarios de abogado.**[26] Ello se debe a que el deber de defender a los asegurados crea un deber de fiducia entre la aseguradora y

---

[23] *Véase*, *Empire State Surety Co. v. Pacific Nat. Lumber Co.*, 200 F 224 (1912); *Tozer v. Ocean Accident & Guaranty Corp.*, 99 Minn. 290, 109 N.W. 410 (1906); Barry R. Ostrager & Thomas R. Newman, *Handbook on Insurance Coverage Disputes*, en las págs. 717-726 (10th ed. Aspen Law & Business 2000).

[24] *PFZ Properties v. General Accident*, *supra*; *Employers Casualty v. Moore*, 60 Ariz. 544, 142 P 2d 414 (1943).

[25] *Pagán Caraballo v. Silva Ortiz*, *supra*. *Véase* también, *PFZ v. General Accident*, *supra*; *Morales v. Roldán*, *supra*.

[26] *Íd.*

el asegurador.[27] Tal relación requiere honestidad entre las partes contratantes, entiéndase el asegurado y asegurador. La confianza y la expectativa de que una aseguradora defienda a su asegurado en una acción judicial instada en su contra por un riesgo cubierto en su póliza de seguros crea, implícitamente, la relación fiduciaria entre el asegurado y la aseguradora bajo una póliza de responsabilidad civil.[28]

**El que una aseguradora tenga el deber de representar legalmente a su asegurado no significa que la aseguradora tenga una obligación de litigar la controversia en sus méritos.** En la póliza de responsabilidad civil toda aseguradora se reserva el derecho a transigir cualquier reclamación instada en contra de un asegurado si lo determina prudente.[29] En síntesis, la aseguradora voluntariamente y a base de su experiencia decide si lo más prudente es transigir la reclamación instada en contra de su asegurado o litigar la controversia en sus méritos. **La referida potestad es de la aseguradora.** Por lo expuesto, es previsible que una aseguradora, mediante sus actos y

---

[27] *Baxter v. Royal Indemnity Company*, 285 So. 2d 652, 655 (1973); *Tyler v. Grange Insurance*, 473 P. 2d 193, 197 (1970); *Bennet v. Corrady*, 305 P. 2d 823, 827 (1957).

[28] *Íd.*

[29] Existe una excepción, en acciones civiles donde el demandado posee una póliza de responsabilidad civil profesional la aseguradora no puede transigir la reclamación sin la aquiescencia del asegurado, independientemente de la cuantía reclamada. Lcdo. Rolando Cruz, *Derecho de Seguros*, § 24.2, en la pág. 302 (JTS 1999).

decisiones, incurra en algún tipo de negligencia, la cual podría culminar en algún daño o perjuicio para su asegurado.

Cuando un asegurado sufre un daño que era previsible y fue causado por un acto u omisión negligente de su aseguradora, ésta vendrá obligada a reparar los daños sufridos por su asegurado.[30] Por el contrario, si las consecuencias de los actos u omisiones de la aseguradora no fueran previsibles entonces ésta no incurriría en negligencia ante su asegurado y no tendría el deber legal de responder por los daños sufridos por su asegurado.[31] **Hemos expresado que las consecuencias de un acto negligente que deben preverse son las que están dentro de las probabilidades y no dentro de las posibilidades.**[32]

**En síntesis, cuando una aseguradora expide una póliza de responsabilidad civil tendrá el control sobre cualquier reclamación civil cubierta por la póliza de seguro que se entable en contra de su asegurado.**

Debido a la situación en que se encuentran las aseguradoras, a los efectos de decidir si transige una reclamación instada en contra de uno de sus asegurados o por el contrario decide litigarla judicialmente, es que se espera un alto grado de cuidado y prudencia por parte de

---

[30] Lcdo. Rolando Cruz, *Derecho de Seguros*, § 25.5, pág. 318 (JTS 1999).

[31] *Íd.*

[32] *Faulkner v. Nieves*, 76 D.P.R. 434 (1954).

las aseguradoras. El grado de prudencia y cuidado tiene que ir dirigido a salvaguardar los intereses de su asegurado.[33] Una aseguradora que asume la defensa de un asegurado no debe de anteponer sus propios intereses a los de su asegurado. Tal actuación desvirtuaría el propósito de las pólizas de seguros las cuales pretenden brindar una expectativa de tranquilidad al asegurado en caso de ocurrir cualquier evento cubierto por la póliza de seguro.[34]

Aunque la aseguradora contrata la representación legal del asegurado, ésta viene obligada a emplear, con los asuntos e intereses del asegurado, el grado de cuidado que una persona prudente y razonable ejercitaría en la defensa de sus propios intereses.[35] **Si la aseguradora no cumple de buena fe con tal norma de conducta será responsable ante su asegurado por cualquier cuantía en exceso del límite por ocurrencia pactado en la póliza de establecerse mediante sentencia una indemnización mayor.[36]**

**La responsabilidad del asegurador por el monto completo de la sentencia obtenida al no emplear el debido cuidado en la defensa de su asegurado dimana de su**

---

[33] *Southern Farm Bureau Cas. Ins. v. Parker*, 341 S.W. 2s 36 (1961); *Trade General Insurance v. Rudco Oil & Gas*, 129 F. 2d 621 (1942); 142 A.L.R. 799.

[34] 26 L.P.R.A. § 2001; Lcdo. Rolando Cruz, *Derecho de Seguros*, § 23.1, en la pág. 289 (JTS 1999).

[35] *Lino Roldán v. Kenneth Serra*, 105 D.P.R. 507 (1976).

[36] *Stilwell v. Parsons*, A. 2d 397 (1958); *Auto Mut. Indemnitiy Co.v. Shaw*, 184 So. 852, 134 Fla. 815 (1939);

**violación a una obligación contractual de la cual surge un derecho del asegurado o del cumplimiento negligente de tal obligación.** [37] De un contrato de seguro emana un convenio entre las partes contratantes, entiéndase el asegurador y la aseguradora, de que ninguna de las partes envueltas en la relación contractual podrá realizar gestión alguna que perjudique los derechos de la otra parte. [38] Por lo expuesto, una aseguradora que conduzca y dirija la representación legal de un caso en contra de su asegurado debe de actuar de buena fe para salvaguardar los intereses de éste último. [39] La aseguradora viene obligada a emplear el grado de diligencia y cuidado razonable según las circunstancias particulares de cada caso. [40]

El Artículo 1056 del Código Civil de Puerto Rico dispone lo siguiente: "[l]a responsabilidad que proceda de negligencia es igualmente exigible en el cumplimiento de toda clase de obligaciones pero podrá moderarse por los

---

*Ballard v. Ocean Accident*, C.C.A. 1936 Wis. 86 (1936); 86 F. 2d 449.

[37] *Chttick v. State Farm Mut.*, D.C. Del. 1959, 179 F. Supp. 276 (1959).

[38] *Morales v Automatic Vending*, 103 D.P.R. 281 (1975); *Gruenberg v. Aetna Ins.*, 9 Cal. 3d 566, 510 P. 2d 1032, 108 Cal. Rptr. 480 (1973); *Crisci v. Security Ins.*, 50 Cal. 2d 654, 426 P. 2d 163 (1967).

[39] *Southern Farm Bureau Cas. Ins. Co. v. Parker*, *supra*; *Traders General Ins. v. Rudco Oil & Gas Co.*, *supra*.

[40] *Íd.*

tribunales según las cosas".[41] Además, el Artículo 1057 del

Código Civil dispone lo siguiente:

> La culpa o negligencia del deudor consiste en la omisión de aquella diligencia que exija la naturaleza de la obligación y corresponda a las circunstancias de las personas, del tiempo y del lugar.
> Cuando la obligación no exprese la diligencia que ha de prestarse en su cumplimiento, se exigirá la que correspondería a un buen padre de familia.[42]

Una aseguradora incurre en negligencia en la defensa de su asegurado cuando la aseguradora no exhibe el patrón de conducta correspondiente a un buen padre de familia. Entiéndase, el de una aseguradora prudente y razonable en el descargue de sus funciones.[43] Para determinar si una aseguradora actuó negligentemente en la defensa de los intereses de su asegurado hay que ponderar, a modo ilustrativo, los factores siguientes: **si el caso pudo haber sido transigido dentro del límite de la póliza**;[44] que la investigación realizada por la aseguradora sea inadecuada o incompleta; **la aseguradora haya manejado negligentemente la negociación de una posible transacción**; falta de preparación adecuada para asumir la defensa de su asegurado; no se invocaron a tiempo las defensas disponibles y/o la aseguradora contrató los servicios de un abogado sin experiencia en todas las áreas del derecho

---

[41] 31 L.P.R.A. § 3020.

[42] 31 L.P.R.A. § 3021.

[43] Lcdo. Rolando Cruz, *Derecho de Seguro*, § 25.5, en la pág. 315 (JTS 1999).

aplicables; la aseguradora no levantó ninguna defensa afirmativa disponible en beneficio de su asegurado; la aseguradora no contestó la demanda o cualquier alegación responsiva; **que deje de descubrir evidencia intrínseca para el caso**; dejar de recurrir en alzada a un tribunal de mayor jerarquía dentro del término disponible para ello cuando una sentencia adversa con toda probabilidad podría ser revocada.[45]

Hemos establecido, como norma general, que una aseguradora responde en exceso del límite por ocurrencia al verse obligada a pagar las costas y los honorarios de abogados cuando falta a su deber de proveerle representación legal *bona fide* a su asegurado. Lo anterior, siempre y cuando el riesgo que motivó la reclamación esté cubierto por la póliza.[46] Una mayoría de los estados de la Unión reconocen la obligación del asegurador en el pago total de la sentencia, no importa si la cuantía excede el monto del límite por ocurrencia pactado en la póliza de seguro. Además, la aseguradora podría ser sancionada y tener que pagar las costas, los intereses pre-sentencia y los honorarios de abogados según el tribunal estime pertinente en el ejercicio de su sana discreción

---

[44] *Morales v. Automatic Vending*, *supra*.
[45] Lcdo. Rolando Cruz, *Derecho de Seguros*, § 25.4, en las págs. 317-318 (JTS 1999).

[46] *PFZ Properties v. General Accident*, *supra*.

judicial.[47] De igual forma, la aseguradora viene obligada a pagar todos los intereses post-sentencia haya actuado de buena fe o de mala fe.[48]

¿En el caso de marras, la C.S.M. tiene la obligación de pagar intereses pre-sentencia sobre el límite por ocurrencia pactado en la póliza de seguro por haber sido encontrada temeraria? Nos es forzoso contestar tal interrogante en la afirmativa. Veamos.

La Regla 44.3 de Procedimiento Civil, *supra*, dispone, en parte, lo siguiente:

> (b) El tribunal también impondrá a la parte que haya procedido con temeridad el pago de interés al tipo que haya fijado la Junta en virtud del inciso (a) de esta regla y que esté en vigor al momento de dictarse la sentencia desde que haya surgido la causa de acción en todo caso de cobro de dinero y desde la radicación de la demanda, en caso de daños y perjuicios, y hasta la fecha en que se dicte sentencia, excepto cuando la parte demandada sea el Estado Libre Asociado de Puerto Rico, sus municipios, agencias, instrumentalidades o funcionarios en su carácter oficial. . .

Cuando un tribunal en su sana discreción encuentra a una parte temeraria está imponiendo una sanción procesal. Uno de los propósitos de la sanción es compensar, en lo posible, los daños y/o prejuicios sufridos por la parte que

---

[47] Barry R. Ostrager & Thomas R. Newman, *Handbook on Insurance Coverage Disputes*, en las págs. 717-726 (10th ed. Aspen Law & Business 2000); George J. Couch, *Cyclopedia of Insurance Law*, § 56:38, en las págs. 55-57 (2ed. L.C.P. & B.W. 1983).

[48] *Íd.*; 32 L.P.R.A. Ap. III, R. 44.3(a).

no ha sido temeraria.[49] **Concluimos que la obligación de satisfacer una sanción por haber sido hallado temerario es una que surge de la conducta del litigante. En el caso ante nos, la C.S.M. por haber ejercido el control absoluto en la litigación del caso.** Tal obligación es una separada y distinta a la obligación de la aseguradora de reparar los daños causados por su asegurado hasta el límite máximo de cubierta por ocurrencia pactado en la póliza de responsabilidad civil. Cuando un Tribunal de Primera Instancia en el ejercicio de su sana discreción concluye que una de las partes actuó de forma temeraria, procede la imposición de los intereses por temeridad y honorarios de abogados para sancionar tal actuación.[50] De otra parte, los intereses forman parte de la sentencia y pueden cobrarse aunque éstos no se mencionen en la sentencia.[51]

No podemos perder de perspectiva que la industria de seguros está revestida de un alto interés público, máxime, cuando algunas pólizas de seguro se han convertido en requisitos obligatorios para poder cumplir con ciertas y determinadas obligaciones. No hemos encontrado fundamento legal que impida imponer el pago de honorarios de abogado a una aseguradora que haya sido encontrada temeraria aunque sobrepase el límite por ocurrencia pactado en la póliza de

---

[49] *Elba A.B.M. v. U.P.R.*, 125 D.P.R. 294 (1990); *Santos Bermúdez v. Texaco P.R.*, 123 D.P.R. 351 (1989); *Fernández v. San Juan Cement*, 118 D.P.R. 713 (1987).

[50] *Torres v. E.L.A.*, 136 D.P.R. 556 (1994).

[51] *Mun. de Mayagüez v. Rivera*, 113 D.P.R. 467 (1982).

seguro.[52] **De igual forma, no encontramos fundamento legal alguno que impida el sancionar a una aseguradora con la imposición de intereses pre-sentencia en exceso al límite por ocurrencia pactado en la póliza de seguro cuando ésta ha sido temeraria y tuvo el control de la representación legal otorgada a su asegurado.**

La Regla 44.3 de Procedimiento Civil, *supra*, establece claramente una sanción a la parte temeraria. De igual forma, la Asamblea Legislativa decidió excluir de su aplicación al Gobierno, los municipios, las agencias, instrumentalidades o funcionarios en su carácter oficial. No obstante, en ninguna de las disposiciones contenidas en las Reglas de Procedimiento Civil, *supra*, encontramos que una aseguradora pueda ser liberada de la sanción por temeridad.

En el caso ante nos, cuando los agentes de la policía se presentaron a la escena del accidente el co-demandado, señor Luis Rivera Torres, **admitió haber perdido el control del vehículo e impactar al señor Camacho Alvarado causándole la muerte en el acto. Además, el informe del accidente fue estipulado entre las partes y presentado como evidencia sin que surgiera controversia alguna durante el juicio. De igual forma, el informe pericial económico, estableciendo el lucro cesante de los**

---

[52] *Íd.* Tampoco, hemos encontrado fundamento legal que impida imponer el pago de intereses post-sentencia a una aseguradora aunque éstos sobrepasen el límite por ocurrencia pactado en la póliza de seguro. *Íd.*

**demandados por la cantidad global de $187,127.00, fue estipulado por las partes**.

**Es pertinente reseñar que los demandados nunca refutaron la alegación de negligencia**, la cual el Tribunal de Primera Instancia dictaminó en su Sentencia que fue probada de forma incontrovertible. Por lo expuesto, la actuación de la representación legal provista por la C.S.M. fue claramente temeraria, como bien dictaminó el foro primario. La C.S.M. no admitió su responsabilidad, lo que produjo que la controversia se dilucidara ante el foro primario a pesar de que la negligencia incurrida por su asegurado era de su pleno conocimiento[53] y litigó el caso de forma obstinada. El no sancionar a la C.S.M. con el pago de intereses pre-sentencia que sobrepasen el límite de cubierta por ocurrencia, sería premiarla por una actuación contumaz ante los tribunales de justicia. De igual forma, implicaría el sancionar a una persona, el asegurado, quien en el caso ante nos, según se desprende del expediente judicial, no tuvo ningún tipo de injerencia sobre la representación legal brindada por la C.S.M.. Concluimos que en el presente caso la C.S.M. está obligada a pagar la totalidad de los intereses pre-sentencia aunque estos sobrepasen el límite de cubierta por ocurrencia pactado en la póliza de seguro.

El propósito de la norma aquí pautada es que se cumpla con la Regla 44.3 de Procedimiento Civil, *supra*,

para sancionar la litigación temeraria, evitando así la presentación de pleitos frívolos. [54] **Una aseguradora se libera de la temeridad cuando a su mejor entender, el accidente fue causado por su asegurado y así se lo hace constar al Tribunal de Primera Instancia en su primera alegación, no importa el parecer de su asegurado. [55] Cuando la aseguradora entiende que el valor de la reclamación excede el límite por ocurrencia pactado en la póliza tiene el deber de consignar el importe máximo que tenga que pagar debido a su obligación contractual con su asegurado. Lo anterior, evita que una aseguradora sea encontrada incurso en temeridad, además de agilizar los procedimientos judiciales. [56] Una oferta de sentencia es el recurso idóneo, si se presenta en la primera oportunidad. Dicha oferta de sentencia no elimina la temeridad de la aseguradora antes de realizar la oferta pero pude ser considerada como un atenuante ante la sanción a imponerse por temeridad. [57]**

---

[53] *Oficina de Ética Gubernamental v. Román González*, *supra.*

[54] Es importante reseñar que una cláusula en una póliza de seguro en la cual se disponga que la aseguradora no responderá por intereses en exceso al límite por ocurrencia pactado en la póliza **no es absoluta.** Ello, porque las aseguradoras no pueden renunciar o liberarse de la sanción por temeridad mediante una cláusula.

[55] *Véase*, *Lino Roldán v. Kenneth Serra*, *supra*; *Viuda de Passalacua v. Cancel*, 90 D.P.R. 501, 503 (1964); *U.S. Casualty v. Tribunal Superior*, 89 D.P.R. 785, 789 (1964).

[56] *Lino Roldán v. Kenneth Serra*, *supra.*

[57] *Íd.*

Permitir a una aseguradora que tiene el control de la representación legal de ésta y/o de su asegurado litigar temerariamente y sólo responder por los intereses pre-sentencia hasta el tope del límite por ocurrencia pactado en la póliza de seguro es permitir una injusticia. Se llegaría al absurdo de incentivar a las aseguradoras a litigar todo tipo de reclamación entablada en su contra y/o en contra de un asegurado, aunque sea de forma temeraria. **Ello, en contravención a los principios cardinales de nuestro sistema procesal civil.**[58]

De esa forma, se desvirtuaría el propósito del contrato de seguro. Podría producirse la anomalía en que el asegurado viniere obligado a pagar una cantidad mayor por los intereses pre-sentencia que la aseguradora, por la temeridad de ésta última, de limitarse los intereses pre-sentencia al tope del límite por ocurrencia pactado en la póliza de seguro. **No podemos ignorar que en un caso como el de autos la aseguradora fue quien tuvo el control de la defensa de su asegurado.** Tal situación resulta ser muy onerosa para el asegurado. **Ello, debido a que la aseguradora no estaría obligada a responder por su temeridad y conducta violatoria a su deber de fiducia para con el asegurado.**

No se puede perder de perspectiva que las aseguradoras, en la mayoría de los casos, se encuentran en una posición más aventajada que la otra parte contra quien

---

[58] 32 L.P.R.A. Ap. III, R. 1.

litiga. Ello, por ser expertos en la industria de seguros así como por contar con abogados entrenados en tal área del derecho. Es razonable que una aseguradora responda por su temeridad y su conducta negligente. Lo anterior evita que un asegurado se vea obligado a pagar una suma en exceso al límite de cubierta por ocurrencia pactado en la póliza de seguro debido a la conducta temeraria observada por la aseguradora a través de la representación legal que seleccionó para atender su causa.[59]

Efraín E. Rivera Pérez
*Juez Asociado*

---

[59] **Cuando en la demanda se reclama una cantidad mayor al límite por ocurrencia pactado en la póliza de seguro, el asegurado puede conseguir una representación legal para salvaguardar sus intereses respecto a la cantidad en exceso al límite de cubierta. En tales casos la imposición de intereses pre-sentencia sobre el límite pactado en la póliza de seguro podría no recaer en la aseguradora si la actuación temeraria es de la representación legal pagada por el asegurado para beneficio exclusivo de éste.**